THE UNITED STATES WRINGER COMPANY

*v.*

JULIA M. COONEY.

*Opinion filed February 21, 1905—Rehearing denied April 5, 1905.*

1. APPEALS AND ERRORS—*assigned errors not argued are waived.* Unless errors assigned in the Appellate Court are presented and argued in that court they will be regarded as waived on further appeal to the Supreme Court.

2. SAME—*whether note sued upon was paid is question of fact.* Whether the note sued upon has been paid is a question of fact where the evidence is conflicting, upon which question the judgment of the Appellate Court, sustaining that of the trial court following the verdict of the jury, is final.

3. BILLS AND NOTES—*defendant relying on agreement with the agent of payee must show authority.* A defendant to a suit on a note who seeks to take advantage of the act of plaintiff's agent in canceling the note under an alleged agreement between the defendant and the agent has the burden of proving the authority of the agent to make the agreement or that the plaintiff ratified the action.

4. SAME—*what does not estop party from showing conditions under which check was endorsed.* The presence upon the face of a check of the words "in payment of note," when the check was en-

dorsed by the payee of the note, does not preclude the person so endorsing the check from showing that it was endorsed for another purpose than the payment of the note; and she may show the conditions under which the check was endorsed, it being a question of fact for the jury whether such conditions existed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

C. E. & G. D. ANTHONY, for appellant.

McCLELLAN & SPENCER, for appellee.

Mr. CHIEF JUSTICE RICKS delivered the opinion of the court:

This is a suit upon a joint and several promissory note made by appellant and six others. It appears from the record that this case was twice before the Appellate Court, and also a case against another maker, George K. Nash, upon the same note, was before the Appellate Court once. On the first trial of this case the trial court gave the peremptory instruction asked by the appellant, directing a verdict in its favor, but upon appeal the Branch Appellate Court reversed the judgment of the trial court and remanded the cause to the superior court of Cook county for a new trial, and upon a rehearing in the superior court a verdict was rendered in favor of appellee by a jury, fixing the damages at $5210, upon which verdict the court entered a judgment, and appellant prosecutes this appeal from the judgment of the Appellate Court affirming that judgment.

The evidence discloses that Patrick H. Cooney, husband of appellee, was during the year 1892-93 general manager of the appellant company, which company was doing business at that time under the name of the American Installment Company. John J. Lentz was president and treasurer of the company. In December, 1892, the company, being in need of funds, borrowed of appellee $3000, and the joint and

several note sued on was executed by appellant and others, including the plaintiff's husband, Patrick H. Cooney. It appears that about the middle of May, 1893, there was a meeting of all the stockholders of the company for the purpose of raising money for the payment of bills and to make a showing to the creditors, who were pushing them. At this meeting a resolution was passed, as shown by the records, assessing each stockholder $3000. This assessment was, in fact, a loan from the stockholders to the company. It appears from the evidence that at the meeting, or shortly afterwards, Cooney informed Lentz, the president of the company, that he had no money of his own with which to pay this $3000, and that his wife wanted her money that the company owed her, paid. Cooney's version of the transaction, from that time on, was substantially as follows: Lentz suggested that Cooney ask his wife to re-loan her money due on the note to the company. After Cooney had seen his wife he told Lentz that she positively refused to re-loan the money in any way and insisted on its being paid, and Lentz then said that it would be necessary to show that Cooney had put his money into the company in order to influence the other stockholders to put in theirs, and suggested the way to do it would be for him to give Cooney a check for the amount of the note, with interest, and Cooney could give Lentz his check to correspond; that they would deposit the checks on the same day, and they would pass through the clearing house and one would pay the other; that he (Cooney) could mark the note paid, so that Lentz could show to the other stockholders that it had been canceled and also show that Cooney had paid his assessment; that it would be only a very short time until the note would be paid and Mrs. Cooney get her money, and that he, Cooney, need say nothing to his wife about the transaction. Cooney finally agreed to Lentz's proposition as above stated, and Lentz then gave Cooney a check, payable to the order of the appellee, for $3105, drawn by the company, with the understanding that Cooney was to

give Lentz his check for the same amount, and in accordance with this arrangement with Lentz he at the same time gave to Lentz his two checks drawn to the order of the company, one for $3000 and one for $100. Cooney then took the $3105 check to his wife and got her to endorse it but did not tell her that it was a check. He merely told her she must endorse it in order to get her money. He did not read it to her and she did not read it. All three of the checks were then deposited on the same day in accordance with the arrangement with Lentz, and the note which Cooney had obtained from his wife to collect was afterwards marked by Cooney, on its back, "Paid in full, $3105." Cooney never informed his wife as to the particulars of the transaction until a short time before the bringing of the suit. He soon after the transaction left the company and finally closed out his interest. This arrangement is denied by Lentz, who insists the check was given in payment of the note, and that the note had ever since been in the hands of the company, and that Cooney borrowed the money from his wife to pay his assessment or loan to the company. Appellee testified that she knew nothing of the transaction until shortly before the bringing of the suit and that she had never received her money, but admits endorsing the check for $3105, but insists she did not know what it was or what it was for, and never authorized her husband to cancel her note.

Several errors are assigned and argued in this court, and we will endeavor to dispose of them in the order in which appellant has argued them.

The first error is the refusal of the court to give the peremptory instruction to find the issues for the defendant. It is sufficient to say of this instruction that it appears from appellant's brief and argument filed in the Appellate Court and certified to this court that this point was not presented to that court for its consideration, and we have uniformly held that this court would not pass upon questions not set out in written motions for new trials and not passed upon by the

trial courts, nor upon questions not presented to and argued before the Appellate Court. Nor is it sufficient to simply assign an error and not argue it to the courts. Unless errors assigned are argued they will be considered waived and will not be passed upon by this court. If the rule were otherwise, a litigant could then have his case tried upon one theory in one court and upon a different theory in another court, which method cannot and will not be tolerated. Under the condition of the record we do not feel warranted in passing upon this question.

The next error presented is that the court erred in admitting in evidence the note sued on. Appellant is in the same condition as to this error that it was as to the one already referred to, and for the reason above given it will not be passed upon.

The third and fourth errors argued are simply arguments upon questions of fact as to whether or not the note in question was paid, upon which the verdict of the jury, under proper instructions and approval of the trial court, sustained by the judgment of the Appellate Court, is final. It will readily be seen from a reading of the statement of the evidence given by the parties mostly interested, that there is quite a conflict in the evidence and difference of opinion as to the manner in which the transaction was consummated, and while the transaction, as related by Cooney himself, has a decidedly shady appearance, in view of all the circumstances, yet if he is to be believed the part performed by Lentz is equally as questionable, and such acts should not be countenanced by courts. The decision of such questions is peculiarly in the province of the jury and the trial court, as it should be where they have an opportunity to see and hear the witnesses. The appearance a person makes when testifying before a court adds to or detracts from, to a great extent, the weight to be given to his evidence. It being a question of fact, under the circumstances above stated, as to whether or not the note had been paid, the judgment of the Appellate Court is final.

It is next insisted that the instruction given upon behalf of appellee was erroneous. The instruction is so long that we do not feel warranted in setting it out in full. The principal error relied upon, we think, is the part in relation to the burden of proof, which reads: "And the burden of proof is on the defendant to show that the plaintiff gave to said Patrick H. Cooney authority to make and carry out such agreement, if any, or that she afterwards ratified the same." We think this part of the instruction only relates to the alleged agreement between Lentz and Cooney. Whether or not there was an agreement entered into was a question of fact for the jury, and if, as the jury must have found, there was such an agreement, then the burden of proof as to that question was upon the defendant to show that such agreement was made by the authority or consent of the appellee, with Cooney as her agent, as where one attempts to take advantage of the act of an agent it is for him to show the authority of the agent. (*Jackson Paper Co.* v. *Commercial Bank,* 199 Ill. 151.) Other questions are raised in reference to the instruction, but we deem it unnecessary to discuss them in detail, as it is sufficient to say, as a whole we think the instruction good.

Nor do we think the instruction is in conflict with defendant's fourth instruction, which says: "As a matter of law the burden of proof is upon the plaintiff, and it is for her to prove her case by a preponderance of the evidence." The term "burden of proof" is used in different senses. In one sense the term marks or expresses the burden or duty of the actor or party who has the risk or affirmative of the issue and will lose the case if he does not in the end establish such issue. In another sense the term means or expresses the burden or duty of a party, in order to succeed, of going forward, at any particular stage, with the evidence, and really means that the burden is upon him to establish the particular claim, while the burden of the issue,—that is, the burden of proof in the sense of ultimately proving or establishing the issue

or case of the party upon whom such burden rests, as distinguished from the burden or duty of going forward and producing evidence,—never shifts, but the burden or duty of proceeding or going forward often does shift from one party to the other and sometimes back again. In general, the party who seeks to move a court in his favor, whether as an original plaintiff or as a defendant, who, by admitting plaintiff's contention and setting up an affirmative defense, becomes the real actor, must establish his claim. (1 Elliott on Evidence, secs. 129-139.) It was necessary for appellee to prove the averments of her declaration. This she did by introducing her note and proving it had never been paid to her. Appellant contended that it had been paid to her by payment to Cooney, as her agent, through the arrangement between Lentz and Cooney. This was an affirmative defense, and it was necessary for the appellant to not only show payment to Cooney, the alleged agent, but to show, also, that he had authority from his principal to receive payment and cancel the note or that she ratified the act of the agent. Upon this issue the burden was upon appellant. *Angus* v. *Chicago Trust and Savings Bank,* 170 Ill. 298.

It is next urged that the court erred in refusing appellant's instructions numbered 1, 2 and 3. Instruction No. 2 is to the effect that if plaintiff was in limited financial circumstances and the makers of the note were solvent, and suit was not begun until seven years after the note became due, the law would presume that the note had been paid. This instruction is bad, for the reason the statute fixes the time as to when, as a matter of law, a promissory note is presumed to be paid, at ten years, and the evidence discloses it had only been a little over six years from the execution of the note until suit was brought. Instruction No. 3 reads as follows:

"If the jury believe, from the evidence in this case, that the check of the American Installment Company of $3105, introduced in evidence in this case, had, when delivered to said plaintiff, or her agent, Patrick H. Cooney, the follow-

ing words, 'In payment of note of 15 Dec. '92,' written on its face, and that said plaintiff endorsed said check in blank, and that said check was paid by said defendant either to said plaintiff or her agent, that, as a matter of law, said plaintiff is estopped by said words, and cannot now claim that said check was given by said plaintiff or received by her for any other purpose than for the payment of the note described on the face of the check."

This instruction was certainly bad, for the reason appellee had a right, as a matter of law, to explain the conditions under which she signed the check, and it was a question of fact for the jury as to whether the conditions existed as she claimed. As to instruction No. 1, there was no evidence to sustain at least a part of the instruction, and it was therefore no error to refuse it, and it is subject to the same vice as the last one above named.

It is next insisted that the court erred in refusing certain evidence offered by appellant. It appears from the record that the evidence was objected to for the reason no foundation was laid for the same, and appellant conceding this, asked leave of the court to re-call Cooney in order to lay the foundation, which request was refused by the court. This was a matter of discretion with the court, and unless it appears it was manifestly prejudicial to appellant's interest to refuse the request it could not be held error. In order for the court to determine whether it was prejudicial error to refuse the request it should be made to appear by the record that the appellant, either by questions asked Cooney or by a statement of counsel, advised the court as to what it proposed to prove by Cooney, so that the trial court and this court could determine whether the evidence was competent and material. The question asked the witness on the stand to which the objection was interposed and which seemed to prompt the appellant to desire to re-call Cooney, was as to a conversation between Cooney and the witness in the absence of appellee. If the witness could not testify as to that con-

versation had in the absence of appellee, neither could Cooney testify to such conversation. It could only amount to a further cross-examination of Cooney, which must be left to the discretion of the court.

Other minor questions are raised in reference to exclusion of evidence, but upon a careful examination of the record we are unable to say that any error was made by the trial court in refusing such evidence.

Upon the record as presented to us we find no reversible error, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*