THOMAS APICELLA *et al.*, Plaintiffs-Appellants, *v.* ROBERT L. MACE, Defendant-Appellee.

First District (3rd Division)   Nos. 61974, 62607 cons.

Opinion filed March 16, 1977.

Arthur S. Gomberg and Bernard H. Ostrowsky, both of Chicago (Samuel Nineberg, of counsel), for appellants.

Garbutt, Jacobson & Lee Associated, of Chicago (Patrick J. Callahan, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This action was brought to recover for personal injuries and property damage sustained by the plaintiffs when the car in which they were riding collided with that of the defendant, Robert L. Mace. The jury returned verdicts in favor of the defendant and against the plaintiffs and judgments were entered on the verdicts. Plaintiffs appeal alleging that the conduct of defense counsel during trial and in his closing argument deprived plaintiffs of a fair trial; that the court erred in refusing to permit plaintiffs to call a witness to rebut the testimony of the defendant and his witnesses; and that the verdict was against the manifest weight of the evidence.

The accident occurred on Sunday, April 25, 1971, at approximately 5:25 p.m. Both vehicles were westbound on the Eisenhower Expressway. The expressway at the scene has four westbound lanes and is approximately 48 feet wide.

It was agreed that the lanes would be numbered 1 to 4 from the

extreme left or south to extreme right or north, the first lane being that on the extreme left as you face west (the lane closest to the center or median strip in which the CTA rapid transit line runs), lane 4 being the extreme right lane (the lane closest to the grassy embankment). Defendant Robert Mace, called by plaintiffs as an adverse witness (Ill. Rev. Stat. 1971, ch. 110, par. 60), testified that although he had previously thought that there were only three lanes on the expressway, he now knew that there were four. He had been driving in lane 4, on the extreme right and had moved to lane 3, straightened out so he was proceeding straight west, travelling behind a semi-trailer truck. He then moved into lane 2 to pass the truck. He was already in lane 2, having passed the truck when he first saw the Apicella vehicle in his side-view mirror. Defendant was at that time in lane 2 about five to six car lengths beyond the truck (which was still in lane 3) and estimated that the Apicella car was approximately that far behind him in lane 1. He testified that beyond that point, he did not "change lanes." There was a black car to his left in lane 1 ahead of him and when defendant came within a car length or so of it and was going to pass it on the right side, the black car cut in front of him and into his lane. The defendant swerved to the left, hit his brakes and skidded five or six car lengths at a 45-degree angle southwest to northeast before coming to a halt in, or partially in, lane 1. It was at this point that the collision with the Apicella car took place.

Victor Apicella, the driver of the vehicle in which he and the other plaintiffs were riding, testified that he was in lane 2, the second from the left. As he was nearing the scene he noticed, out of the corner of his eye, defendant's car cutting across from lane 4 into lane 2, on an angle. At that point, he applied his brakes, and since there was traffic both to his left and to his right, he could not avoid hitting defendant's vehicle. On cross-examination, he stated that when he first saw the defendant's car 40 feet separated the front bumper of his car and the closest point of defendant's car. He stated in his deposition that he had applied his brakes as soon as defendant's car started coming into his lane, and that that was when he first saw him.

Counsel for both parties stipulated that Officer John Cotter, the police officer who had been called to investigate the scene of the accident, would have testified, had he been present in court, that the vehicle of the defendant was westbound on the Eisenhower Expressway and was changing lanes at the time of the collision. The officer had been subpoenaed by both parties and had reported to the court that he was too ill to testify.

Connie McGowan, the daughter of Thomas and Catherine Apicella, both plaintiffs, testified that she had spoken to the defendant at Presbyterian-St. Luke's Hospital, and he had told her that he was sorry

that he hit the other car, "but I forgot to look in my mirror." However, Victor Apicella, called as an adverse witness by the defendant, testified that in his deposition in answer to a question asked regarding the conversation between the defendant and his niece, Connie McGowan, he stated that defendant had said he "didn't have time to look in the rear view mirror."

Plaintiffs initially contend that they were deprived of a fair trial because of a pattern of misconduct followed by defense counsel during the trial and in closing argument. Plaintiffs cite several errors of counsel, all of which were objected to at trial, and many of the objections were sustained. However, we fail to note any deliberate "pattern" as alleged by plaintiffs which deprived them of a fair and impartial trial.

■■ The plaintiffs specifically point to the statement of defense counsel during his closing argument which precipitated an objection and motion for mistrial. Counsel had said: "When I worked at this steel mill, just think about four or five years ago, during a summer while I was in law school, I first met Mr. Mace. I'm going to have to make some statements here that he may * * *." Plaintiffs claim that the remark was highly prejudicial since it inferred that the defendant had no insurance and that defense counsel was an inexperienced attorney just out of law school. While the trial judge stated, out of the presence of the jury, that the remark was highly improper, he felt it did not warrant the granting of the motion for a mistrial. The record reveals that the motion was thoughtfully considered, and the prejudicial effect carefully weighed. The court based its decision on the length of time already spent on the case and other elements. The objection to the remark was sustained and the jury instructed to disregard it. The trial judge was in a better position to evaluate the merits of the motion for a mistrial, and we see no reason to overturn his decision.

Plaintiffs further contend that it was error to refuse to permit Officer John Cotter to be called to rebut the testimony of defendant Mace and his two witnesses. Officer Cotter had been subpoenaed by both parties, but was apparently ill at the time he was to testify. Both parties stipulated that Officer Cotter's testimony would be that the defendant "was changing lanes at the time of the collision." The stipulation was read into evidence during plaintiffs' case in chief and prior to the time Mace testified as an adverse witness. Mace testified that at the time of the collision he was facing southwest at a 45 degree angle and had been stopped for one to one and a half seconds prior to impact. Counsel for plaintiffs attempted to present Officer Cotter who was now available and ready to testify to rebut this testimony during plaintiffs' case and before defendant's two witnesses testified. The court refused to permit him to testify. Plaintiffs argue that even if the stipulation prevented him from testifying on direct

examination, he should not have been barred as a rebuttal witness. Plaintiffs cite *Pellico v. E. L. Ramm Co.* (1966), 68 Ill. App. 2d 322, 216 N.E.2d 258, and *Loftus v. Loftus* (1907), 134 Ill. App. 360, for the proposition that

> "* * * where a defendant introduces evidence of an affirmative matter in defense or justification, the plaintiff, as a matter of right, is entitled to introduce evidence in rebuttal as to such affirmative matter. [Citation.]" *Loftus v. Loftus* (1907), 134 Ill. App. 360, 362.

■■■ In the case at hand, it was during the plaintiffs' case in chief that the evidence which plaintiffs sought to rebut was introduced through the testimony of the defendant called as an adverse witness. Rebuttal is evidence to disprove an affirmative defense and to meet new points raised by defendant's evidence. (See Cleary, Handbook of Illinois Evidence § 5.5, at 74 (2d ed. 1963); McCormick, Evidence § 4, at 6 (2d ed. 1972).) The evidence here is not rebuttal evidence because it does not disprove an affirmative defense nor does it meet new points raised by the defendant's evidence. The court properly refused admission of the evidence on this theory. More appropriately, we believe, the plaintiffs' effort to place Cotter on the stand was in effect an effort to recall a witness. Although Cotter did not initially personally appear he was presented to the court by way of a stipulation. Recalling a witness rests largely within the discretion of the trial judge and unless it appears that the denial of the request was manifestly prejudicial to the plaintiffs it is not error to refuse a request to permit the recalling of the witness. (*United States Wringer Co. v. Cooney* (1905), 214 Ill. 520, 527.) The plaintiffs state that the most important part of the evidence from Cotter would be that Mace did not state at anytime that he was stopped at the time of the collision but to the contrary was in the process of changing lanes. It had already been stipulated that the policeman would testify that the defendant was changing lanes, a statement which certainly connotes movement. In addition, counsel for the plaintiffs made his point explicitly during the closing argument when he remarked: "You don't tell the police officer that you're in the process of changing lanes if you were being cut off. You tell them, 'I was cut off.'" The denial was not manifestly prejudicial. The court did not abuse its discretion in barring Cotter from testifying.

■■ Finally, plaintiffs argue that the verdict was against the manifest weight of the evidence. The facts in this case were difficult to discern; the testimony was at times confusing and contradictory. It is the sole function of the jury, as the fact finding body in this case, to determine where the truth lay in the conflicting testimony. (*Douglas v. Chicago Transit Authority* (1972), 3 Ill. App. 3d 318, 321, 279 N.E.2d 44.) Where, as here, it cannot be said that an opposite conclusion was "clearly apparent," or that

the finding of the jury was "unreasonably arbitrary and not based on the evidence" (*Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 158, 349 N.E.2d 578), we will not interfere with the decision of the jury.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.