THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL HUDSON, Defendant-Appellant.

Fifth District    No. 79-245

Opinion filed July 18, 1980.

John H. Reid and E. William Hutton, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant Michael Hudson was convicted of forgery in the Circuit Court of Madison County following a jury trial at which he represented himself. On appeal, defendant contends that his waiver of counsel was invalid and that various trial errors occurred. We find that reversible error occurred in the admission of prior unsworn consistent statements by the State's witnesses, most of whom were, by their own testimony, accomplices of defendant.

Defendant was represented at his arraignment by an assistant public defender. On the morning of trial, the public defender informed the court of a potential conflict of interest based upon certain decisions of this court (see *People v. Meng* (1977), 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, *rev'd* (1979), 79 Ill. 2d 173, 402 N.E.2d 169; *People v. Ishman* (1978), 61 Ill. App. 3d 517, 378 N.E.2d 179, *rev'd sub nom. People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157), in that the public defender's office represented two of the State's witnesses who were being prosecuted for the same offense. The public defender was allowed to withdraw, and the court informed the defendant that he had a right to appointed counsel and that a continuance would be granted to permit his new counsel to prepare for trial. At that point, defendant objected strenuously to any further delay, inasmuch as he had spent approximately four months in jail awaiting trial. Defendant further insisted on representing himself, as reflected in the following colloquy:

"DEFENDANT HUDSON: Well, your Honor, I would like to represent myself.

THE COURT: What I'm going to do, I'm going to have you talk to a lawyer and he—

DEFENDANT HUDSON: I don't wanta' see no lawyer.

THE COURT: Okay. He can sit in the corner and you can ask him questions.

DEFENDANT HUDSON: I'll just sit over there in the Madison County Jail. Why should I have a lawyer when I can send my own self to the penitentiary? I ain't gonna' have no lawyer.

THE COURT: You're upset.

DEFENDANT HUDSON: No, I ain't upset. I ain't done nothin' wrong; I know I ain't did nothin'. I'm not upset. I just know, I'd just rather represent myself. I feel better if I send myself to the penitentiary.

THE COURT: What I'm going to do, I'm going to appoint a lawyer, and then you can tell him that you don't want him to help you. And I'll have him sit here, and he won't bother you in any way, and you—

\* \* \*

DEFENDANT HUDSON: I don't, I don't, I don't, I don't want you to appoint me a lawyer. I wanta' represent myself. I'm tryin' to make this plain to see I wanta' represent myself. I don't wanta' see nobody comin' over to the courtroom, I mean over to the jail or nothin'.

\* \* \*

THE COURT: Mr. Allen [assistant public defender], the Court will allow you to resign at this time. And the Court is going to appoint another lawyer. And this case will be continued until that lawyer tells me or that you tell me you want to go to trial.

DEFENDANT HUDSON: Who?

THE COURT: That you.

DEFENDANT HUDSON: I'm ready to go to trial tomorrow.

THE COURT: We've got a problem with that because if I let you go to trial without a lawyer—

DEFENDANT HUDSON: I wanta', what I'm sayin' is I wanta' represent myself. Now that's the law, ain't it? Can't I represent myself?

THE COURT: There is a rule that you can do that.

DEFENDANT HUDSON: Well then, I'm ready to go to trial tomorrow. I feel I could beat my own case myself.

\* \* \*

MRS. JENSEN [assistant state's attorney]: I would suggest that you appoint a lawyer.

THE COURT: I'm going to appoint somebody, and they'll sit in the—

* * *

THE DEFENDANT HUDSON: Judge Clark, what I'm sayin' I wanta' represent myself. Tomorrow. In court.

THE COURT: I'm going to arrange the way the trial should be. Your rights will be protected. And—

DEFENDANT HUDSON: I ain't got no rights.

THE COURT: That's your statement. And I have a duty and responsibility to you.

DEFENDANT HUDSON: But you refuse me to represent myself.

THE COURT: I'm not doing that. I'm saying that I'm going to have a lawyer here who is familiar with the case. * * * He won't interfere with you. But if you decide that you want to ask him a question about something in the law—

DEFENDANT HUDSON: I know the law. I read, I know enough, I know enough about the law about a forgery case. I don't know enough about the law about robbery and stuff like that. But I know enough about the law with the stuff they gotta' prove that I had the check. And I know I ain't had no check. All I know is I can represent myself.

THE COURT: All right. We'll bring the whole thing out. We'll select the jury."

Thereafter, the case proceeded to trial. The State presented evidence that Eurgie Johnson mistakenly received a welfare check intended for Gwendolyn Johnson; that defendant visited Eurgie Johnson's home before she returned the check; that defendant presented the check to a cousin, Diane Johnson, and asked her to endorse it; and that defendant admitted doing so to Diane's husband, Derrick Johnson. The Johnsons all testified to these matters, and during their testimony they read into the record prior consistent statements they had given to an investigating officer.

As further State's evidence, defendant's girlfriend, Debra Williams, testified that the defendant coerced her into cashing the Johnson check at a drive-in window of a local bank. A mutual acquaintance, Rodney Webster, testified that he drove Williams and the defendant to the bank where the transaction occurred. Williams and Webster also read their prior statements during the course of their testimony.

Defendant's first argument is that his waiver of counsel was ineffective because the trial court failed to comply with the requirements of Supreme Court Rule 401(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 401(a)),

in that it failed to inform him of the minimum and maximum terms of authorized imprisonment for the offense.

Rule 401(a) establishes the prerequisites for an effective waiver of counsel:

"(a) Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court."

■■ We have held that substantial compliance satisfies the rule and that failure to advise a defendant explicitly of minimum and maximum penalties does not alone constitute reversible error. (*People v. Black* (1979), 68 Ill. App. 3d 309, 385 N.E.2d 899; accord, *People v. Smith* (1975), 33 Ill. App. 3d 725, 338 N.E.2d 207 (waiver of counsel); *People v. Brown* (1976), 37 Ill. App. 3d 398, 346 N.E.2d 165; *People v. Von Koeppen* (1975), 33 Ill. App. 3d 877, 338 N.E.2d 589 (waiver of indictment).) Our review of the record persuades us that the trial court's admonitions were adequate.

■■ ■ Defendant's next assignment of error, however, is well taken. He asserts that the admission of prior consistent statements by the State's witnesses during their direct examination deprived him of a fair trial. It is the general rule that a witness may not testify as to statements he made out of court for the purpose of corroborating his testimony given at trial. (*People v. Wesley* (1959), 18 Ill. 2d 138, 153, 163 N.E.2d 500, 508; *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Exceptions to this rule allow the admission of prior consistent statements to rebut a charge of recent bias or fabrication or where the statements are part of the res gestae. Unless those conditions are present, admission of the prior statements is error. (*People v. Buckley* (1976), 43 Ill. App. 3d 53, 356 N.E.2d 1113.) When an improperly admitted prior consistent statement substantially deprives a defendant of his right to a fair trial, we have found reversible error. *People v. Sanders* (1978), 59 Ill. App. 3d 650, 375 N.E.2d 921.

There had been no suggestion of recent bias or recent fabrication during the State's case in chief warranting the admission of the earlier

statements. On appeal, the State concedes that introduction of the prior statements was error but argues that it was harmless, in light of the defendant's attempted cross-examination about the statements and that the error was waived by defendant's failure to object at trial.

We are aware that pro se litigants are not entitled to special treatment in the courtroom and the normal rules of procedure apply without dispensation. Our supreme court has held that a defendant who competently elects to represent himself must assume the responsibility for his decision and its consequences. (*People v. Richardson* (1959), 17 Ill. 2d 253, 161 N.E.2d 268.) Courts are not required to relax the rules of criminal procedure (*People v. Murphy* (1972), 3 Ill. App. 3d 345, 351, 277 N.E.2d 721, 726) or to assume a partisan or protective role toward the defendant. A pro se defendant's inability to represent himself competently does not invest the trial court with a duty to intervene and assist in the defense. (*United States ex rel. Smith v. Pavich* (7th Cir. 1978), 568 F.2d 33; *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 650, 378 N.E.2d 1200, 1205.) This principle has been applied recently to civil pro se litigants as well. *Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 21, 392 N.E.2d 371, 375.

■ Nonetheless, we find that in the circumstances at bar, admission of five prior, unsworn consistent statements given to the police by the State's witnesses was plain error. (Ill. Rev. Stat. 1979, ch. 110A, par. 615.) The prosecution must have known such a tactic to be highly improper, bordering on prosecutorial misconduct and overreaching. The thrust of defendant's attempted defense was to discredit the State's witnesses by suggesting that they were falsely accusing the defendant to protect themselves and their relatives. Here the statements were used not only to bolster the witnesses' testimony during the State's case in chief but also as substantive evidence of guilt. As we said in *People v. Sanders* (1978), 59 Ill. App. 3d 650, 654, 375 N.E.2d 921, 924, corroboration by repetition "preys on the human failing of placing belief in that which is most often repeated." If there is a reasonable possibility that erroneously admitted testimony contributed to a conviction, the error cannot be considered harmless. *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746.

In *Riley*, as in the case before us, inadmissible evidence was introduced to corroborate the testimony of a State's witness. The defendant introduced rebutting evidence and the court concluded that "[w]here evidence is conflicting and there is incompetent and prejudicial testimony, it cannot be held that the jury acted only on the competent evidence." (63 Ill. App. 3d 176, 182, 379 N.E.2d 746, 751.) In the case at bar, the Johnsons' pretrial statements duplicated their testimony, but the pretrial statements of the eyewitnesses Webster and Williams were somewhat inconsistent.

During trial, Webster testified that defendant inserted the forged

check and identification into the bank cannister, but Webster's prior statements recited that Debra Williams supplied the check and identifying medical assistance card. On cross-examination, the witness stated that he couldn't recall which person did what. Debra Williams, the only other eyewitness, testified that she put the check in the cannister herself, but when more identification was requested, the defendant supplied it. According to her prior statement, however, the defendant handed her a wallet containing the check and identification while they were in Webster's car. At the bank window, the defendant passed her the bank cannister, and she inserted the check. When the check was returned for additional identification, Williams handed the medical card to the defendant, and he returned the cannister in order to cash the check. Although the defendant presented no evidence, we find the instant situation analogous to *Riley*.

Notwithstanding the general rule that evidence erroneously admitted will be considered harmless if there is sufficient competent evidence to establish guilt beyond a reasonable doubt (*People v. Pelkola* (1960), 19 Ill. 2d 156, 166 N.E.2d 54), the erroneous admissions here clouded the evidence to such a degree as to make it impossible to determine whether the jury relied upon it. Therefore, we find it necessary to reverse the decision of the Circuit Court of Madison County and to remand this cause for a new trial.

Reversed and remanded.

JONES, P. J., and SPOMER, J., concur.