THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT CHARLES RUSSELL, Defendant-Appellant.

Second District No. 2—86—1137

Opinion filed December 12, 1988.

42

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert F. Casey and Gary V. Johnson, State's Attorneys, of Geneva (William L. Browers and Lori J. Miller, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

A jury found defendant, Robert Charles Russell, guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14), and he was sentenced to a term of eight years' imprisonment. On appeal, defendant makes claims of evidentiary and procedural error at both his trial and the sentencing hearing and also contends that he was not proved guilty beyond a reasonable doubt. We reverse and remand for a new trial.

Defendant was charged with knowingly committing an act of sexual penetration of complainant by the use of force and that in so doing he displayed a dangerous weapon. At trial defendant acknowledged that he engaged in sexual intercourse with complainant but testified that he did so with her consent. Defendant and complainant were the only occurrence witnesses, and her testimony was essentially as follows.

Complainant resided in Aurora with her boyfriend and their daughter and, after a quarrel on the night of June 9, 1986, she left at about 9 p.m. to go to a girlfriend's home. She and her friend, Debra Palmer, talked and complainant drank two beers until 12:15 a.m., when she left to return home. She did not go straight home but drove around, taking her time as she had much on her mind. At 12:30 a.m. she had stopped at a stop sign when a man she did not know, later identified as defendant, pulled open the passenger door and jumped

into the car beside her. He held a knife to complainant's neck and ordered her to drive into the parking lot of a nearby car wash. For the next hour defendant talked to and threatened complainant while the two of them sat in the parked car.

Defendant then directed complainant, at knife point, to drive a few blocks to the Hillcrest Apartments and to park in a secluded area in back of the apartment complex near a dumpster. Defendant continued to talk to and threaten complainant with the knife and, after an unsuccessful attempt to sexually assault her in the car, he dragged complainant out of the passenger door and behind the car and threw her to the ground. The complainant testified that after a brief struggle, defendant subdued her by stuffing dirt into her mouth and attempting to choke her, then had sexual intercourse with her.

When defendant got up and walked away, complainant ran to a nearby apartment where she pounded on the door and screamed. The occupants let her in and called the police. While complainant said she had been confused and in shock, she thought she had told the responding police what had happened. On cross-examination, complainant denied that she had told the police she did not want to make a report, saying they never asked her about that. Complainant also denied telling any officer that there had not been a rape. She did recall telling the police that she only wanted them to take her to her car so she could go home and see her baby, and that she then drove home followed by two police officers, arriving at about 4 or 4:30 a.m.

Later that morning, at about 10 a.m., complainant went to the gas station where her friend Debra Palmer worked and told her what had happened; at Palmer's suggestion, she went to the hospital for an examination. At noon the following day, June 11, 1986, complainant was also interviewed by police sergeant Ronald Martin about the incident.

Other testimony relevant to the State's case was given by Ernestine Hutchins, a resident of the home where complainant sought shelter after the alleged assault. Hutchins said complainant had dirt and leaves on her back, was crying and shaking, and told her that a man had jumped into her car when she stopped for a stop sign, held her at knife point for three hours, and raped her. Over defendant's objections, Debra Palmer also was permitted to testify that complainant told her later that morning she had been raped and was allowed to relate most of the same details of the incident as those given by Hutchins. Sergeant Martin also testified that complainant told him during an interview that her assailant had introduced himself as Charles Russell and that she had identified a photograph of him. However,

Martin went on to repeat complainant's account of the incident at great length and in considerably greater detail than had either Hutchins or Palmer. Martin also stated that he believed there were grass stains on the blouse complainant wore on the night of the claimed offense and later turned over to him as evidence. Nurse Weber testified that when she examined complainant later in the day of the occurrence, she observed a bruise on her left shoulder, an abrasion on her left arm, and a linear mark around her neck.

Defendant's testimony about the incident directly conflicted with that given by complainant. He stated that he had first met complainant approximately two years earlier and had seen her frequently in the neighborhood around the Hillcrest Apartment complex. They had often talked about complainant's problems with her boyfriend, as well as about her job and her little girl. According to defendant, he ·had sold marijuana to complainant four or five times in the past and, about three weeks before the alleged offense, he had taken $25 from complainant for purchase of the drug but had never delivered it to her.

Defendant testified that on the night in question he and David Jones were sitting in Jones' car in a parking lot when complainant approached them and asked about getting some marijuana. As she had only a little money, defendant offered to give her a joint of marijuana in return for sex, and complainant agreed. Defendant rode with complainant first to a car wash where defendant's car was parked, but they decided to stay in complainant's car and drove to the rear of the Hillcrest Apartments. Defendant testified that complainant undressed herself and they had sexual intercourse in the car. Later, complainant started to smoke the joint defendant had given her and on discovering that it was not marijuana she became angry, saying, "God damn you Charlie, I'm going to get even with you," and walked up the hill away from him. He started to follow her up the hill, yelling that he meant her no harm, but when he could no longer see her he walked back to his own car. Defendant denied complainant's allegations that he held her at knife point and forcibly sexually assaulted her.

Officer John Saltijeral, called as a defense witness, stated that he had spoken with complainant at the scene on the night of the incident and, although she had been hysterical and almost incoherent, in response to questions complainant said a black man had tried to rape her but did not do so. She also told the officer she did not want a report made on the incident and drove home, followed by the two officers, who did not make out a report of the incident. Another defense witness, Ernest Jones, corroborated part of defendant's testimony,

stating that he and defendant were sitting in Jones' car in a parking lot prior to the time of the alleged rape when the complainant drove into the parking lot in her own car and, later, defendant got into her car. Defendant, Jones, and complainant talked and socialized and complainant did not seem unhappy.

Further defense testimony was presented by five witnesses who lived in the Hillcrest Apartment complex at the time of the incident. Each of them identified the complainant from a photo lineup and said they had seen or spoken with her at or near the apartment complex during 1985 or 1986. Each of these witnesses also testified that she drove a truck, variously described as orange, white and orange, and rust colored, and identified a photo of a truck, which later in trial was claimed by defense counsel to be a truck owned by complainant's boyfriend, as the truck they had seen complainant driving. These witnesses also testified complainant usually had her baby with her, and one witness said he had seen her in the company of defendant.

In addition, in her direct examination, the complainant testified that before the night of this incident she had never been to the Hillcrest Apartments, had not known where they were, and had never owned a red or rust-colored pickup truck and did not know anyone who had such a truck. Defendant's counsel claimed surprise by this testimony and advised the court that such a vehicle was parked near the courthouse during trial and the Illinois Secretary of State's Office had stated, on telephone inquiry, that the truck was registered to the complainant's live-in boy friend, Rudy Rinosa, who had been present at the trial. Counsel sought a short continuance to secure a certified copy of the truck registration for admission in evidence for purposes of the impeachment of the complainant.

Defendant's motion for a continuance was denied and he was found guilty by the jury and thereafter sentenced to eight years' imprisonment by the trial court.

We consider first defendant's contention that it was error requiring reversal to permit the State's witnesses, Debra Palmer and Sergeant Ronald Martin, to bolster the complainant's testimony by recounting the details of her hearsay complaints to them. The State argues that the testimony was admissible under the corroborative complaint exception to the hearsay rule. Defendant responds that exception was not applicable here and that he was unfairly prejudiced by the repeated, detailed accounts of the complainant's story to the jury.

Defendant agrees that the testimony of Ernestine Hutchins that the complainant came to her door and stated she had been raped was

admissible under the spontaneous declaration exception to the hearsay rule, noting it was made immediately after the alleged sexual assault and was the least detailed of the three hearsay accounts given to the jury. Defendant urges, however, that the hearsay statements of complainant made five to six hours after the incident to Debra Palmer, and those made the next day to Officer Martin, do not meet the standards of any exception to the rule. The State in its response correctly does not suggest that the alleged victim's complaint to Palmer and Martin qualify as spontaneous declarations, but argues that the testimony was admissible under the corroborative complaint rule and, alternatively, that the admission of this hearsay evidence was harmless error.

 █ In order for a statement to qualify as a spontaneous declaration or utterance, three factors must be present: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Damen* (1963), 28 Ill. 2d 464, 471, 193 N.E.2d 25, 29-30.) The corroborative complaint exception under which hearsay complaints of rape victims have also been admitted in evidence is based on the reasoning that it is natural and to be expected that such a victim would speak out as to the offense, and that the fact she did not do so would be evidence that nothing had occurred. (*People v. Damen* (1963), 28 Ill. 2d 464, 472, 193 N.E.2d 25, 30; *People v. Harris* (1985), 134 Ill. App. 3d 705, 713-14, 480 N.E.2d 1189, 1196; *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 349-50, 432 N.E.2d 986, 993-94.) In the absence of proof of a complaint after such an offense, the trier of fact might with justification conclude that as no complaint had been made, no rape occurred. (*Fuelner*, 104 Ill. App. 3d at 351, 432 N.E.2d at 993-94.) To qualify as a corroborative complaint, a statement must be promptly made, without inconsistent or unexplained delay, and must be spontaneous rather than in response to a series of questions. (*People v. Williams* (1986), 146 Ill. App. 3d 767, 771, 497 N.E.2d 377, 380.) There is no fixed time within which the complaint must be made (*Harris*, 134 Ill. App. 3d at 714, 480 N.E.2d at 1196), and delays have been sufficiently explained when, during the lapse of time, the complainant was incoherent, fearful, hysterical or emotional, and who, on finding a person or place in which she felt secure, made a complaint as an outpouring of injury. (*Williams*, 146 Ill. App. 3d at 771, 497 N.E.2d at 380; *People v. Houck* (1977), 50 Ill. App. 3d 274, 285, 365 N.E.2d 576.) However, only the fact that the complaint was made, and not the details thereof or name of the accused, may be admitted in evidence, since that is all

that is necessary to overcome the presumption arising from the victim's silence. *Damen*, 28 Ill. 2d at 473, 193 N.E.2d at 30; *Fuelner*, 104 Ill. App. 3d at 350, 432 N.E.2d at 994; *People v. Robinson* (1978), 73 Ill. 2d 192, 199-200, 383 N.E.2d 164; *People v. Witte* (1983), 115 Ill. App. 3d 20, 27, 449 N.E.2d 966.

■■ We find that the statements made by complainant to Debra Palmer several hours after the incident, and those made the following day to Officer Martin, do not qualify for admission in evidence under the corroborative complaint exception to the hearsay rule. Under this exception, only the fact of a complaint is admissible and not, as here, the complete details of the alleged offense, or the name of the accused, as given to these witnesses by complainant after the event. Even if restricted only to the fact of the complaints, as the testimony should have been limited here, these complaints still were not made as soon as was practicable under the circumstances of this case.

The alleged victim did make a prompt and spontaneous complaint of the rape to the witness Ernestine Hutchins, who then called the police. The responding officer testified, however, that complainant denied there had been a rape and declined to make a report. The complainant then returned to her home, where she remained for five to six hours after the alleged attack when she drove to her friend Palmer's place of employment where, in response to an inquiry, complainant said she had been raped. Her inconsistent delay in making a complaint to the authorities, or anyone else, during this period will preclude admission in evidence of the fact of a complaint to her by this witness under the corroborative complaint exception. Compare *Fuelner*, 104 Ill. App. 3d at 350, 432 N.E.2d at 994; *People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865; *People v. Stewart* (1970), 130 Ill. App. 2d 623, 264 N.E.2d 557.

We reach the same conclusion as to the similar testimony by Officer Ronald Martin. The complainant first spoke to him at noon of the day following her conversation with Debra Palmer, in a formal police interview. In trial, the officer testified as to the details of the alleged offense, as related to him by complainant, including therein the name of the accused, contrary to the limitations prescribed for the corroborative complaint exception to the hearsay rule.

■■ ■ We recognize that defendant's counsel in cross-examination did inquire of the officer as to complainant's failure to report certain facts to him, in an apparent effort to show differences in her trial testimony and the police report. Some details of the rape complaint were thus brought out by the defense. However, that circumstance did not permit the State on redirect examination to inquire as to all of her

statements to the officer. The State also argues that the objectionable testimony was properly admitted pursuant to the completeness doctrine under which, when a witness relates part of a conversation, the opposing party may generally bring out the rest of that conversation. (*People v. Williams* (1986), 146 Ill. App. 3d 767, 770, 497 N.E.2d 377; *People v. Weaver* (1982), 92 Ill. 2d 545, 556-57, 442 N.E.2d 255.) However, if the related conversation is otherwise inadmissible, the principle of completeness does not give a party an automatic right to introduce it merely on the ground that the opponent has opened the door. (*Williams*, 146 Ill. App. 3d at 770, 497 N.E.2d at 379; E. Cleary & M. Graham, Handbook of Illinois Evidence §106.2, at 29 (3d ed. 1979).) The remainder of a conversation will be admitted if it tends to explain, qualify, or otherwise shed light on the meaning of the evidence already received (*People v. Pietryzk* (1987), 153 Ill. App. 3d 428, 438, 505 N.E.2d 1228), or if it is necessary to prevent the jury from being misled as to the nature of the statement it has already heard. *People v. Olinger* (1986), 112 Ill. 2d 324, 337-38, 493 N.E.2d 579, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329; *Weaver*, 92 Ill. 2d at 556-57, 442 N.E.2d at 259.

In the case at bar, the complainant had already testified fully and had been cross-examined as to most of the details subsequently repeated by Martin. Ernestine Hutchins and Debra Palmer had also testified regarding many of these details. Thus, by the time Martin gave his cross-examination testimony, the jury was familiar with both the content and the context of complainant's allegations. There was no need for the officer to repeat the details on redirect in order to prevent the jury from being misled or to explain or qualify anything he had said on cross-examination. The jury already had the whole picture. Under these circumstances, the completeness doctrine did not justify admission of Martin's redirect testimony as given here.

The improper repetition of complainant's story by Officer Martin was particularly harmful to defendant because it was so thorough. Hearing the entire story in considerable detail a second or third time would tend to unfairly reenforce in the jurors' minds the complainant's version of what had occurred between her and defendant. In *People v. Brown* (1988), 170 Ill. App. 3d 273, 282, 524 N.E.2d 742, in circumstances very similar to the present case, this court noted the following language from *People v. Smith* (1985), 139 Ill. App. 3d 21, 33, 486 N.E.2d 1347, 1355, to support the conclusion that repetition of corroborative complaint details will unfairly enhance a victim's believability:

"The danger in prior consistent statements is that a jury is

likely to attach disproportionate significance to them. People tend to believe that which is repeated most often, regardless of its intrinsic merit, and repetition lends credibility to testimony that it might not otherwise deserve."

While *Smith* involved repetition of prior consistent statements, we perceive the same danger in the improper repetition of details described in a corroborative complaint. Also, that complainant's story was retold by a police office may lend it unwarranted credence.

While defendant did object in trial to the introduction of the testimony of Debra Palmer relating to the details of the complaint to her, and also set forth that issue in his post-trial motion, defendant failed to object to the subsequent similar testimony of Officer Martin. It follows that the issue is waived as to Martin's testimony and can be considered on review only if it constituted plain error. (107 Ill. 2d R. 615(a).) Where the evidence is closely balanced, as in this case, a reviewing court may consider errors that have not been properly preserved for review (*People v. Enoch* (1988), 122 Ill. 2d 176, 198-99, 522 N.E.2d 1124), and we do so here.

The State also urges that the admission of the details of the complainant's several reports of the alleged rape was harmless error as cumulative evidence (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164) in view of the "overwhelming" evidence of defendant's guilt. We do not agree that the quantum of evidence of guilt is as suggested by the State. In the final analysis, the fact finder will be required to resolve that issue on conflicting evidence in this case. We note too that the prejudice to defendant caused by the improper admission in evidence of the Palmer and Martin hearsay testimony was exacerbated when the prosecutor argued that the fact the complainant told her story over and over again to the police, her friend, and others tended to establish it was true. It is improper to thus seek to bolster the credibility of a witness by repetition of a story having a single source, the complainant. See *People v. Buckley* (1976), 43 Ill. App. 3d 53, 56, 356 N.E.2d 1113; *People v. Brown* (1988), 170 Ill. App. 3d 273, 282, 524 N.E.2d 742; *People v. Smith* (1985), 139 Ill. App. 3d 21, 32-34, 486 N.E.2d 1347.

The error we have discussed requires reversal of defendant's conviction and a new trial.

We will discuss two other claims of error made by defendant as they may arise again on retrial. Defendant objects to an *in limine* order entered by the trial court which barred him from offering testimony of other witnesses that they had sold marijuana to the complainant on other occasions. We agree with the trial court that such

evidence would have no relevance or probative value in support of defendant's claim that complainant had consensual sexual relations with him in exchange for the drug (see *People v. Gorney* (1985), 107 Ill. 2d 53, 59, 481 N.E.2d 673), and it was properly excluded.

■■ Defendant also asserts that the trial court erred in permitting the complainant to testify, over his objection, that she had moved out of the State because of the incident with defendant. He argues that fact was not relevant to any issue in the case and it suggested that defendant posed a continuing threat to the complainant. We agree. A similar question was discussed in *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 351, 432 N.E.2d 986, where the court found the evidence there offered to be irrelevant to defendant's guilt or innocence of the crime charged and prejudiced him in the eyes of the jury.

■■ As a final matter, defendant contests the sufficiency of the evidence finding him guilty beyond a reasonable doubt. In keeping with the mandate of *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, we have reviewed the evidence and find that, if believed by the jury, it was sufficient to support the finding that defendant was guilty beyond a reasonable doubt of aggravated criminal sexual assault. We do not suggest any implication as to defendant's guilt or innocence which would be binding on retrial, and the finding is intended only to protect defendant from the risk of being subjected to double jeopardy.

Accordingly, defendant's conviction is reversed and the cause is remanded for a new trial. We need not thus consider other issues raised by defendant.

Reversed and remanded.

INGLIS and REINHARD, JJ., concur.