THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD GRAY, Defendant-Appellant.

First District (1st Division)   No. 1—87—1337

Opinion filed January 28, 1991.

408

Alan D. Goldberg, of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen and Catherine Bernard, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, Donald Gray was found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—14(a)(1), (a)(3)) and he was sentenced to 30 years' imprisonment. On appeal, Gray argues both that the trial court committed prejudicial eviden-

tiary errors and that he was denied the right to confront the complaining witness.

Prior to trial, Gray filed a motion pursuant to the "rape-shield statute" (Ill. Rev. Stat. 1985, ch. 38, par. 115—7) regarding the admissibility of evidence concerning the complainant's past sexual conduct. Prior to the motion's hearing, defense counsel stated that he expected the evidence to show that the complainant told two friends, Karen Hill and Lynette Drew, that she feared that she was pregnant by a man named Keith one week before the rape, hence establishing a motive for the complainant to falsely accuse Gray. At the hearing on the motion, Gray called Karen to testify. Karen, however, stated that the complainant never told her at anytime that she made up the charges against Gray because she feared that she was pregnant by Keith. Lynette also testified at the hearing and stated that in the summer of 1985 Keith told her that he was sleeping with the complainant, but that the complainant never told her that she feared being pregnant by Keith. The court ruled on the motion and stated that it would not permit questioning concerning the complainant's alleged fear of pregnancy without a good-faith basis, but would allow testimony concerning the complainant's relationship with Keith.

At trial, during the State's case in chief, the complainant testified that the events at issue occurred on October 9, 1985, when she was 14 years old. The complainant stated that she knew 37-year-old Gray through her 16-year-old friend Karen because Karen was living with Gray. Further, the complainant testified that on October 9, 1985, she went to Gray's apartment to look at some of Karen's dresses; that when she got inside the apartment and discovered that Karen was not there, Gray approached her and told her that he liked her, wanted to be her sugar daddy, and buy her some clothes and things; and that when she told Gray that she did not like him, he ran towards her, pushed her onto the couch, and said that he wanted to perform cunnilingus on her.

Then, the complainant asserted that when she argued with Gray, he grabbed a gun and told her to pull down her pants, but she refused, and he pointed the gun at her forehead and threatened to "blow her fucking brains out" and to "throw her in Lake Michigan." The complainant also testified that as she started to pull her pants down, Gray's gun was next to him on the floor; that he helped her remove her pants; that Gray performed cunnilingus on her for five minutes; that Gray removed his own pants and tried to have intercourse with her while she was on the couch, but she pushed him off;

that Gray, however, pushed her onto the floor; and that he put a pillow over her face and had sexual intercourse with her.

The complainant also testified that after intercourse she went into the washroom, fixed her clothes and brushed her hair; that when she came out of the bathroom, Gray had his gun in his hand and told her not to tell anyone or else he would kill her; that when they walked to the door, Gray told her to kiss him, which she did, and that she told him to look out the window when she left; that she left his apartment at about 3:45 p.m.; and that when Gray looked out his apartment window, she yelled that she was going to call the police and started running.

Additionally, the complainant asserted that as she ran towards her home, she saw her friend Ike; that Ike asked her what happened because she was shaking; that she told Ike that Gray "raped" her; that Ike walked her home and left her when she ran into her friend Sandra; that the complainant told Sandra what had happened; that subsequently, she went to Sandra's house and talked to Sandra's mother; that Sandra's mother told the complainant to go home and call the police; that as Sandra and Sandra's mother accompanied the complainant home, they ran into two of the complainant's friends, Joann and Lynette; that Joann and Lynette asked the complainant what happened and when she did not answer because she was crying, Joann and Lynette asked if Gray "raped" her; and that the police subsequently took the complainant to a hospital for an examination, in which a swab sample was collected from her vagina.

During defense counsel's cross-examination of the complainant, the trial court asked for an offer of proof regarding complainant's alleged statements that the charges against Gray were not true and her motivation to lie. At this time, the defense counsel questioned the complainant outside the jury's presence. During defense counsel's questioning, the complainant testified that she told Karen that she thought she was pregnant by Keith in July of 1985; that her mother did not know that she was seeing Keith until the summer of 1985; and that when her mother saw her with Keith, she was punished. Then, when the assistant State's Attorney questioned the complainant outside the jury's presence, the complainant testified that after she told Karen that she thought she was pregnant, she had three menstrual cycles before Gray "raped" her.

After the complainant testified outside the jury's presence, the trial court ruled:

"[T]he events of July of 1985 involving Keith *** is [sic] clearly covered by Section 115—7 ***. It reads in prosecutions for ag-

gravated criminal sexual assault and other offenses the prior sexual activity of the alleged victim is inadmissible except as evidence concerning past sexual conduct of the alleged victim with the accused. That event involved somebody completely different than the defendant. It involved one Keith. It occurred in July of 1985. The witness has testified that she had menstrual periods after July of 1985, a number of them, so [she] was not under the impression that in October of 1985 that she was pregnant from any event in July of 1985 or any other event. *** So I see no connection at all between the events of July 1985 and Keith at this trial."

Consequently, the trial court barred defense counsel from questioning the complainant about her fear of pregnancy by Keith.

Then, the State called a criminologist to testify. The criminologist testified that she observed the presence of sperm on the complainant's vaginal swab sample; that she determined that Gray secretes the "H factor" in all of his bodily fluids; that she did not detect any "A," "B," or "H" activity in the complainant's swab sample; that several factors can effect whether the "H factor" appears on the vaginal swab, such as the amount of material present on the swab, a time delay, or cleansing actions; and that, therefore, Gray could not be positively included or excluded as the sperm donor.

Additionally, the State called Joann to testify. Joann testified that she asked the complainant what happened because the complainant was crying, and that the complainant said that she was "raped," and that the complainant said "that she went to Don's [Gray's] house for some clothes and she said that he raped her, he wouldn't let her out."

In the defense's case in chief, Lynette testified that she saw the complainant on the day of the alleged sexual assault. During the State's cross-examination of Lynette, the following exchange transpired.

"Q. [The complainant] told you that she had been raped, didn't she?

A. Yes.

Q. And she told you she had been raped by Donald Gray. Is that right?

A. Yes."

Additionally, during the defense's case, defense counsel attempted to call Stephanie Noble as a witness, but the State asked for an offer of proof because it expected Stephanie to testify that the complainant told her that she was making up the charges out of fear that she was pregnant. Consequently, Stephanie testified outside the jury's pres-

ence and stated that the complainant told her that Gray had not raped her, and that she made up the complaint because she feared that she was pregnant by Keith. Further, Stephanie testified that the complainant asked her to "come to court for her about Donald [Gray]." After hearing Stephanie's testimony, the court granted the State's motion to bar Stephanie's testimony because Gray's attorney failed to lay a foundation for the prior inconsistent statement during the complainant's cross-examination. Additionally, the trial court did not allow the complainant to be recalled because defense counsel's failure to lay the foundation was "a matter of trial strategy."

The defense also attempted to call Patricia Gray, Donald Gray's sister. Again, the State objected to a defense witness and asked for a side-bar. At side-bar, the State summarized Patricia's expected testimony and asserted that the defense counsel had not laid a foundation for her testimony. However, the trial court permitted Patricia to testify outside the presence of the jury. Patricia stated that she knew Karen Hill; that in mid-October of 1985, Karen came to her apartment; and that while Karen was in Patricia's apartment, Patricia picked up her extension phone and overheard a telephone conversation between Karen and someone Karen named XXX (the complainant's first name). Patricia testified that she heard XXX ask Karen to help her "lie on Donald." Also, Patricia heard XXX say that "she had been out doing something she had no business doing and she had to save face with her mom, so she wanted Karen to say that Don raped her." Additionally, Patricia testified that XXX said, "she thought she was pregnant, that she didn't want to get in trouble with her mother, and, therefore, needed to go on with this lie." Lastly, Patricia testified that she had never before heard XXX's voice.

Thereafter, the court granted the State's motion to bar Patricia's testimony on the grounds that the defense counsel failed to lay a foundation with the complainant while she was on the stand. The trial court refused defense counsel's request to recall the complainant so that a foundation could be laid. The court also noted that there was no showing that the complainant was involved in this telephone conversation.

At the conclusion of that day's testimony, the defense counsel again asked leave to recall the complainant, but the request was denied. The motion was renewed and denied the following morning.

After closing arguments and jury instructions, the jury found Gray guilty of aggravated criminal sexual assault. Subsequently, Gray was sentenced to 30 years' imprisonment.

For the reasons set forth below, we reverse Gray's conviction and remand the case for a new trial.

■ Initially, Gray argues that the trial court abused its discretion by refusing to recall the complainant to lay a foundation for Stephanie's and Patricia's testimony, contending that its refusal was manifestly prejudicial because it would have corroborated his defense that the complainant falsely accused him, fearing that she was pregnant by another man. We agree. While the decision to recall a witness is within the trial court's discretion, it is error for the trial court to refuse a request when it appears that the denial was manifestly prejudicial to the defendant. (*People v. Cobb* (1983), 97 Ill. 2d 465, 479, 481, 455 N.E.2d 31; *People v. Holmes* (1982), 104 Ill. App. 3d 1049, 1053, 433 N.E.2d 1027; *People v. Suerth* (1981), 97 Ill. App. 3d 1005, 1013, 423 N.E.2d 1185; *Apicella v. Mace* (1977), 47 Ill. App. 3d 43, 47, 361 N.E.2d 756.) Gray established in his offer of proof that Stephanie's and Patricia's testimony was crucial to his defense that he did not "rape" the complainant, because their testimony would have provided the jury with a motive for the complainant to falsely accuse Gray.

■ Contrary to the State's argument, we note that both Stephanie's and Patricia's testimony was otherwise admissible. In particular, we are not persuaded by the State's argument that Patricia's testimony regarding the overheard phone conversation lacked reliability because "Patricia did not recognize the declarant's [XXX's] voice" and that "there was absolutely no showing that the declarant was the complainant." Gray correctly responded that the declarant's identity was not hearsay because it could be established and authenticated by either direct or circumstantial evidence. (*People v. Poe* (1984), 121 Ill. App. 3d 457, 460, 459 N.E.2d 667; *People v. Patten* (1982), 105 Ill. App. 3d 892, 894-95, 435 N.E.2d 171; *People v. Conway* (1971), 3 Ill. App. 3d 69, 72, 278 N.E.2d 852; *People v. Turner* (1967), 82 Ill. App. 2d 10, 20.) Gray sufficiently corroborated the phone conversation's relevancy and authenticated the speaker's identity by the high probability that Karen Hill had only one friend that had the complainant's first name, that was claiming that "Donald raped" her, and that thought that she was pregnant.[1]

---

[1]We note too that Patricia's testimony was not deemed inadmissible pursuant to the eavesdropping statute (Ill. Rev. Stat. 1987, ch. 38. par. 14—5) because listening to a telephone conversation on an unaltered extension phone is not an eavesdropping device. Ill. Rev. Stat. 1987, ch. 38, par. 14—1(a); *People v. Gervasi* (1982), 89 Ill. 2d 522, 526, 434 N.E.2d 1112; *People v. Gaines* (1981), 88 Ill. 2d 342, 363, 430 N.E.2d 1046 *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.

■ Additionally, after a proper foundation has been laid with the complainant, Patricia's testimony may be admissible as substantive evidence of prior inconsistent statements under section 115—10.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1), if all of the requirements stated therein are satisfied.

Section 115—10.1 provides, in pertinent part:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—
\*\*\*

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and
\*\*\*

(B) the witness acknowledged under oath the making of the statement either in his testimony at the hearing or trial in which the admission into evidence of the prior statement is being sought, or at a trial, hearing, or other proceeding." Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.

■■ Even if Patricia's testimony fails to satisfy each of the requirements contained in section 115—10.1 and therefore is not admissible as substantive evidence, it certainly would be admissible as a prior inconsistent statement for the purposes of impeachment, pursuant to section 115—10.1 (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1). Section 115—10.1 states, in pertinent part, that "[n]othing in this section shall render a prior inconsistent statement inadmissible for purposes of impeachment because such statement \*\*\* fails to meet the criteria set forth herein." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.1.) Additionally, Patricia's testimony would be admissible as a prior inconsistent statement under Supreme Court Rule 238 (134 Ill. 2d R. 238). Accordingly, after a proper foundation has been laid, Patricia's testimony regarding the complainant's statements would be admissible if it conflicted with the complainant's trial testimony. If Patricia's testimony is offered for impeachment, it can "only be introduced for the light it shed on the witness' credibility, and not for the purpose of proving the truth of the material contained in the statement." *People v. Winfield* (1987), 160 Ill. App. 3d 983, 992, 513 N.E.2d 1032, *appeal denied* (1987), 117 Ill. 2d 552, 517 N.E.2d 1094.

■ We find that upon hearing Stephanie's and Patricia's testimony, the jury may have determined that their testimony directly contraverted the complainant's testimony. This is significant because the complainant's testimony was the only direct evidence of Gray's guilt, and because it was uncontroverted that the circumstantial evidence was inconclusive. Consequently, if the jury believed Stephanie, or Patricia, or both, it could have determined that reasonable doubt existed about Gray's guilt. Therefore, the trial court committed reversible error by refusing to recall the complainant to lay a foundation for Stephanie's and Patricia's testimony and, thereby, prevented Gray from presenting his defense. Accordingly, we conclude that this case must be remanded for a new trial.

We also address other issues because they are likely to come up again upon retrial.

■ We are persuaded by Gray's argument that the trial court's refusal to allow the complainant to be cross-examined about her alleged fear of pregnancy as a possible motive to falsely accuse Gray deprived him of his constitutional right to confront the witness against him. The Illinois Constitution provides: "In criminal prosecutions, the accused shall have the right *** to meet the witnesses face to face ***." (Ill. Const. 1970, art. I, §8.) The United States Constitution, with provisions applicable to the States under the fourteenth amendment, similarly provides: "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." (U.S. Const., amend. VI.) Moreover, the confrontation clause guarantees the right of cross-examination and that the right of cross-examination supersedes a statutory right granted a witness when the confrontation is both relevant and based on a showing of bias, prejudice or motive. *Davis v. Alaska* (1974), 415 U.S. 308, 316, 39 L. Ed. 2d 347, 353-54, 94 S. Ct. 1105, 1110; *People v. Sandoval* (1990), 135 Ill. 2d 159, 173-75, 552 N.E.2d 726, *cert. denied* (1990), 498 U.S. ___, 112 L. Ed. 2d 307, 111 S. Ct. 343.

■■ Accordingly, while the express language of the Illinois rape shield statute (Ill. Rev. Stat. 1985, ch. 38, par. 115—7) precludes the admission of evidence of the alleged victim's prior sexual history and reputation, except when it concerns the past sexual conduct of the alleged victim with the accused, Gray's right to confront the complainant through cross-examination about her fear of pregnancy by Keith must supersede the complainant's statutory protection. The complainant's statutory protection is superseded because, clearly, the proffered impeachment regarding her fear of being pregnant was both relevant

and based upon a showing of the complainant's motive to testify falsely in charging Gray.

However, we are not persuaded by Gray's argument that admission of the complainant's testimony regarding the statements she made to Sandra and Sandra's mother was error, because the complainant's testimony was admissible as a prompt complaint. While the testimony of a witness cannot be bolstered by showing that she made similar statements out of court, the complainant in sexual assault cases can show that she made a prompt complaint of the incident. (*People v. Evans* (1988), 173 Ill. App. 3d 186, 199, 527 N.E.2d 448.) "The reasoning underlying the exception is that it is entirely natural that the victim of a forcible sexual assault would speak out regarding it and, conversely, that the failure to do so would, in effect, be evidence that nothing violent had occurred." In such cases, the prompt complaint is used to corroborate the complainant's testimony. (*Evans*, 173 Ill. App. 3d at 199.) Since the sole purpose of the exception is to rebut any presumption which might arise from the complainant's silence, only the fact of the complaint is admissible; neither the details of the complaint nor the identity of the named perpetrator is admissible. (*Evans*, 173 Ill. App. 3d at 199-200; *People v. Russell* (1988), 177 Ill. App. 3d 40, 46-47, 531 N.E.2d 1099; *People v. Damen* (1963), 28 Ill. 2d 464, 473, 193 N.E.2d 25.) The complainant's testimony that she "told Sandra what happened" and "that she talked with Sandra's mother and that Sandra's mother told her to go home and call the police" was admissible because she did not testify to any details of the alleged sexual assault or identify the alleged perpetrator.

However, Gray correctly argues that (1) the complainant's testimony (a) that she told Ike that Gray "raped" her; (b) that Lynette and Joann asked her what happened and then asked if Gray "raped" her; and (c) that the complainant asked Lynette and Joann how they knew; and (2) Lynette's and Joann's testimony that the victim said she was raped by Gray, exceeded that which is admissible as prompt complaints and unduly bolstered the complainant's testimony. The complainant's statements were inadmissible as prompt complaints because they contained Gray's name, and because of the suggestive nature of the questions that elicited the complainant's affirmation that Gray "raped" her. (*People v. Russell* (1988), 177 Ill. App. 3d 40, 46-47.) For the same reasons, we conclude that Lynette's and Joann's testimony regarding the same conversation does not qualify as a prompt complaint. We also reject the State's claim that Joann's and Lynette's testimony regarding the complainant's statements that Gray "raped" her was admissible under the excited or spontaneous

utterance exception to the hearsay rule. Whether or not such statement qualified as an excited utterance, it is nevertheless inadmissible because it improperly bolsters the complainant's testimony. It is plain error to bolster the complainant's credibility by repeating her story which has a single source, the complainant. (See *People v. Russell* (1988), 177 Ill. App. 3d 40, 46, 531 N.E.2d 1099; *People v. Brown* (1988), 170 Ill. App. 3d 273, 283, 524 N.E.2d 742; *People v. Smith* (1985), 139 Ill. App. 3d 21, 32-34, 486 N.E.2d 1347; *People v. Sanders* (1978), 59 Ill. App. 3d 650, 654, 375 N.E.2d 921.) Improperly bolstering a witness' credibility "has been deemed plain error because corroboration by repetition 'preys on the human failing of placing belief in that which is most often repeated.' " (*People v. Smith* (1985), 139 Ill. App. 3d 21, 32, 486 N.E.2d 1347, quoting *People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325.) However, if the following two exceptions exist, prior consistent statements may be admitted to rebut (1) a recent charge of fabrication; or (2) a contention that the witness has a positive motive to testify falsely. (*People v. Tidwell* (1980), 88 Ill. App. 3d 808, 810-11, 410 N.E.2d 1163; *People v. Hudson* (1980), 86 Ill. App. 3d 335, 339, 408 N.E.2d 325.) In the second exception, it must be shown that the presently imputed motive did not exist at the time of the prior statement. (*Tidwell*, 88 Ill. App. 3d at 810-11.) We, therefore, conclude that the complainant's prior consistent statements were not admissible because they unduly bolstered the complainant's credibility and did not qualify as an exception to the rule. We find that if a motive existed, which is a question to be determined by the trier of fact, it existed prior to her declarations to Ike, Lynette, and Joann.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the case is remanded for a new trial.

Reversed and remanded.

CAMPBELL and BUCKLEY, JJ., concur.