THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY OLLINS, Defendant-Appellant.

First District (3rd Division)   No. 1—88—2340

Opinion filed September 2, 1992.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and William P. Pistorius, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendant Larry Ollins was found guilty after a jury trial of murder, aggravated criminal sexual assault, armed robbery, and aggravated kidnapping. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), 12—

14(a)(2), 18—2(a), 10—2(a)3.) Defendant was sentenced to serve natural life for the murder charge, 30 years' imprisonment for the aggravated criminal sexual assault and armed robbery charges, to run consecutively, and a concurrent term of 15 years for the aggravated kidnapping charge. Defendant argues on appeal that: (1) the trial court improperly admitted into evidence expert testimony as to the results of Ollins' blood test assessing his blood type compatibility with semen specimens taken from the victim; (2) the State's introduction into evidence that Marcellius Bradford and the defendant were roommates for a period in 1984 violated the trial court's order prohibiting introduction of evidence of the defendant's prior juvenile criminal history; (3) prior consistent statements of Marcellius Bradford were improperly admitted into evidence by the trial court; and (4) the defendant's right to a fair trial was prejudiced by the cumulative effect of improperly admitted evidence.

The defendant's case was severed from his codefendants' cases on February 24, 1988. The victim, Lori Roscetti, was a medical student at Rush University Medical School. She lived in an apartment in the vicinity of the school. On the evening of the attack, she left the campus accompanied by another student at approximately 1 a.m. They left the campus with Roscetti driving her beige Subaru. Roscetti dropped off the other student at his apartment nearby and then drove towards her apartment. As she was stopped for a stop sign, a man jumped in front of her car. Another man then jumped into the car followed by two others. The assailants held Roscetti in the back of the car while they drove to an isolated railway access road. Upon arrival, Roscetti was taken from the car and assaulted. Her severely beaten body was discovered by a railroad security guard on a routine patrol.

The defendant first argues the trial court improperly admitted into evidence the expert testimony of Pamela Ann Fish of the Chicago crime laboratory. Fish testified as to the results of an analysis of the victim's blood. A vaginal swab was also taken from the victim which indicated the presence of semen. The results of the tests revealed that the vaginal swab was consistent with blood samples taken from both Ollins and another codefendant. The tests did not reveal how many individuals had deposited semen into the victim's vagina. The characteristics of the defendant's blood sample matched the semen found in the victim. However, Fish stated the results of the test also were consistent with 37% of the United States male population.

The defense argues the test results are irrelevant and lack sufficient probative value to be admissible as evidence at trial. The State counters the test results were corroborated by an eyewitness

account of the crime. Additionally, the State points out the jury was instructed as to the specific limitations of the test results in both the opening and closing arguments of the prosecution.

The defense relies principally on the decision in *People v. Schulz* (1987), 154 Ill. App. 3d 358, 506 N.E.2d 1343. In *Schulz*, expert testimony about certain blood and semen samples was held to be error so prejudicial as to warrant reversal. The *Schulz* court held that test results which are overly broad are irrelevant and lack probative value. Thus, the decision of the trial court was reversed. The State maintains that the decision in *Schulz* is distinguishable from the case at bar primarily because the test results presented in *Schulz* were the only evidence of the defendant's guilt. However, the *Schulz* court further said other evidence which serves to narrow the possible donor group would be properly admissible. The specific limitations of the tests Fish performed were clearly indicated to the jury: (1) the tests could not determine how many males deposited semen into the victim and (2) specific characteristics found in the defendant's blood sample were also consistent with 37% of the male population of the United States.

In *Schulz* (154 Ill. App. 3d at 363, 506 N.E.2d at 1346), because of possible deterioration of specific antigens, the defendant could have been or could not have been a secretor or nonsecretor, or could have been or could not have been a donor. A secretor is a person whose blood type is evident in his bodily secretions. Conversely, the blood type of a nonsecretor cannot be determined from his bodily secretions. The inconclusiveness of these specific test parameters serves to further distinguish them from the results of the tests Fish performed on Ollins. Ollins was identified by the test results as a "nonsecretor." From the entire population of the United States, 20% fall within this category. Thus, this test parameter served to further narrow the universe of possible donors to which Ollins could belong from the 37% of the male population of the United States.

The testimony of Bradford was verified by evidence independently obtained through the police investigation. The extrinsic evidence, viewed according to the *dicta* established in *Schulz*, affords further credibility to the tests Fish performed on Ollins. *People v. Wright* (1989), 186 Ill. App. 3d 159, 542 N.E.2d 367, held where there was also an eyewitness identification of the defendant, such identification would serve to further narrow an identified group of possible assailants. *People v. Uzelac* (1988), 179 Ill. App. 3d 395, 534 N.E.2d 1250, established that even test results which place the defendant in an extremely broad group, 80% to 90% of the Caucasian population, may

be properly admissible into evidence if corroborated by other evidence of the defendant's guilt.

Bradford described the attack on Roscetti in specific details. The defendant wore gloves; therefore, no fingerprints of the defendant were found at the crime scene. The clothing the victim wore was correctly described. A tool box was placed at the crime scene on the ground. A wooden stick used to hit the victim was described and later identified as being in the victim's possession by an independent witness at trial. Tom Roscetti, the victim's brother, described the stick he had made for his sister's protection at trial and produced a replica which Bradford had described to the police. The cement chunk which the defendant used to bludgeon the victim's face was identified, and the victim's book bag was also described.

Because the test results were corroborated by substantial independent evidence, we find that Fish's testimony was properly admitted into evidence by the trial court. The final argument the defendant raises on the semen donor issue concerns improper comments made by the prosecutor in closing argument. The defense argues that reversible error was committed by the prosecutor saying that the results of the defendant's test "matched" samples taken from the scene of the crime.

■ A prosecutor is permitted a wide range of expression in comments made during closing argument. Reversal will not be warranted even if the prosecutive comments could be viewed as improper, unless the defendant is substantially prejudiced. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38.) The defendant did not object to the prosecutor's comments in closing argument either at trial or in his motion for a new trial. Thus, the defendant's claim is waived in the absence of plain error. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 508 N.E.2d 687.) The evidence in this case came from sources other than an isolated test result. The totality of the evidence does not present a picture of a closely balanced case. The jury was instructed on the purpose of closing arguments. Such instruction supports that the jury looked at the totality of the evidence in reaching a verdict without being misled by a single comment. Accordingly, even if the jury perceived this single remark in closing argument to be improper, the error would still be harmless. *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

■ Defendant next argues the State improperly admitted into evidence the fact that Ollins was a roommate of Bradford during a specific period of 1984. Bradford had spent nine months at Valley View Correctional Center (Valley View) in 1984. Because defense counsel

referred to Bradford's prior criminal history in their opening statement, it was necessary to negate any inference of concealment of Bradford's prior criminal history. Thus, the State elicited testimony from Bradford that he had been incarcerated in Valley View during a period of time in 1984. Bradford testified that he entered Valley View on April 11, 1984, and was released on August 22, 1986. Ollins maintains this admission violated the order of the trial court barring introduction of evidence establishing defendant's prior juvenile criminal history.

The trial court allowed the State to introduce evidence to prove that Ollins lied to Detective Mercurio when he claimed he did not know Marcellius Bradford. Mercurio asked Ollins a few days prior to his arrest if he knew Bradford and if he had any knowledge of the Roscetti murder. Ollins replied negatively to both questions. The State wanted to impeach Ollins' credibility. Ollins did not testify. The State wanted Bradford to testify that he and Ollins were acquainted prior to the murder. To effect the impeachment of Ollins, the State called Janet Helms to testify. Helms testified only to the fact that she had records in her possession which indicated that Ollins and Bradford lived together during a period of 1984. The State argues that such testimony was in no way prejudicial to the defendant so as to deny him a fair trial. In *People v. McDowell* (1984), 121 Ill. App. 3d 491, 459 N.E.2d 1018, the court held that an assertion by the defendant which is proved to have been false is admissible as substantive evidence because it indicates a consciousness of guilt. In *McDowell*, the court held that the defendant's claim that he was attending school at the time an offense was committed, and the school records showing the contrary, were admissible. Analogously, Ollins' assertion that he did not know Bradford and proof that he did were properly admitted into evidence.

It should be further noted that the State did ask Ollins to stipulate to the roommate relationship with Bradford but Ollins refused. The stipulation would have overcome the objection that the jury could infer the time period Bradford referred to in his testimony was the period of incarceration at Valley View Correctional Center. The refusal of the stipulation request necessitated the State's calling of Helms. The defendant cannot complain of alleged prejudice he had the power to avoid. At no time did Helms identify herself as having any affiliation with the Valley View Correctional Center.

The unidentified records Helms testified to could have come from a variety of sources such as postal or educational records. The jury could have also believed that the time period Helms testified to re-

ferred to Ollins and Bradford being roommates at the ABLA housing projects because Bradford testified on direct that the defendant also lived in the ABLA projects. Accordingly, we find the State did not present evidence which violated the trial court's order prohibiting revelation of the defendant's 1984 juvenile adjudication.

The final issue the defendant raises alleges the trial court erred in allowing specific details of Bradford's statement which described how Ollins allegedly sexually assaulted and murdered the victim to the police, which were consistent with his testimony at trial, to be elicited from Mercurio on redirect examination.

At trial, it was established that Mercurio had four separate conversations with Bradford between January 27 and 28, 1987. The first conversation took place at 12 a.m. on January 27; the second occurred at 4:45 p.m.; the third at 11 p.m.; and the fourth, the next day, January 28, 1987, at approximately 10 p.m. Bradford's court-reported statement was given at the January interview. Following Bradford's testimony and subsequent cross-examination by defense counsel, the State questioned Mercurio as to statements made by Bradford during the third interview which occurred at 11 p.m. on January 27, 1987. The State's questioning of Mercurio on this point was necessitated by the line of questioning defense counsel pursued on cross-examination of both Bradford and Mercurio. Defense counsel questioned Bradford as to perceived inconsistencies between his statements to the police and his trial testimony. Under the holdings in *People v. Hicks* (1963), 28 Ill. 2d 457, 192 N.E.2d 891, and *People v. Richmond* (1980), 84 Ill. App. 3d 1017, 406 N.E.2d 135, the State was entitled to point out correlative consistencies between Bradford's in-court testimony and his prior custodial statements to the police because defense counsel sought to impeach Bradford's credibility by relating inconsistencies between his in-court testimony and his prior statements to the police.

Defense counsel relies on *People v. DePoy* (1968), 40 Ill. 2d 433, 240 N.E.2d 616, which held that where a witness had been impeached by showing that he made statements out of court which contradicted his testimony on the stand, evidence of other previous statements which agree with the witness' testimony still are not admissible. The holding in *DePoy*, however, is distinguishable. The court in *DePoy* disallowed a prior consistent statement made 10 days after the prior inconsistent statement with which the witness was impeached. Because of the 10-day time lapse, the *DePoy* court held that the rule of evidentiary completeness of *Hicks* did not apply to the facts of the case. Bradford, however, was impeached with inconsistent statements he made throughout the different interviews which were conducted on

January 27, 1987. Therefore, the evidentiary completeness rule allowed the State to rehabilitate Bradford by bringing out prior consistent statements made on the same day.

Further, it is well established that evidence of a statement made by a witness out of court but which is consistent with his trial testimony is admissible where the witness is charged with recent fabrication or his opponent raises an inference that a motive to testify falsely exists which did not exist at the time that the prior statement was made. (*People v. Ashford* (1988), 121 Ill. 2d 55, 520 N.E.2d 332; *People v. Smith* (1985), 139 Ill. App. 3d 21, 31-33, 486 N.E.2d 1347, 1354.) Defense counsel charged Bradford with a recent fabrication by implying that he had rehearsed his testimony with prosecutors. Because Bradford reached an agreement with prosecutors approximately three weeks prior to trial, defense counsel also implied that Bradford had a motive to testify falsely. However, it is important to note that no agreement had been reached between Bradford and the State at the time of his January 27, 1987, interviews with the police. Thus, Bradford's prior consistent statement was admissible to rebut the implied charge of recent fabrication. *Ashford*, 121 Ill. 2d 55, 520 N.E.2d 332.

Defense counsel's trial strategy was to portray Bradford as an inherently unreliable witness. In pursuit of this strategy, defense counsel raised inferences that Bradford rehearsed his testimony with prosecutors and that his testimony was influenced by his agreement with the State. For these reasons, we find the State's introduction of Bradford's prior consistent statements was proper rebuttal.

The judgment of the trial court is affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.