THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDERICK R. LAMBERT, Defendant-Appellant.

Second District   No. 2—94—1326

Opinion filed June 4, 1997.

DOYLE, J., dissenting.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (John X. Breslin and Richard S. London, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Frederick Lambert, was found guilty by a jury of the charge of first degree murder (720 ILCS 5/9—1 (West 1994)). Subsequently, the trial court sentenced the defendant to 100 years' imprisonment. This appeal ensued. We reverse and remand for a new trial.

The defendant was charged with the October 29, 1993, beating death of Anthony Doss. The cases of the defendant's codefendants, Antowan Lambert, Carl Dickson, Maurice Bowden, Alexander Dowthard, Jr., and Lucio Flores, were disposed of in separate proceedings.

Among other witnesses, the State called Lucio Flores, the defendant's half-brother, and Antowan Lambert, the defendant's nephew, as its only eyewitnesses tying the defendant to the murder. During his testimony, Flores revealed that on January 7, 1994, he gave a written statement about Doss' death to Rockford police detectives. Detective Bruce Scott later testified that he and Detective Pobjecky took the written statement. Scott denied that any deal was made with Flores in exchange for the statement.

Flores also testified that, in exchange for his testimony at trial against the defendant, the State had agreed to reduce his murder charge to aggravated battery (720 ILCS 5/12—4 (West 1994)) and concealment of a homicide (720 ILCS 5/9—3.1 (West 1994)), for which he would plead guilty and receive a sentence of 30 months' probation and time served.

Antowan testified that he gave a written statement regarding Doss' murder to the Rockford police on January 4, 1994. Antowan admitted at trial that he gave his statement only after he was told that others had talked and after he was told of the possible penalties for murder. Antowan also admitted that, prior to making the statement, the police told him that it would go easier for him if he talked. Antowan testified that, in exchange for his testimony at the defendant's trial, his own murder charge would be reduced to armed violence (720 ILCS 5/33A—2 (West 1994)), to which he would plead guilty for a 7½-year prison term.

At the close of the State's case, the prosecutor read the written statements of Flores and Antowan Lambert to the jury. Counsel for the defense objected to this reading, arguing that the written statements were not admissible as prior consistent statements and also that, if they were, indeed, admissible, they should not be read to the jury. In response, the State argued that the written statements should be admitted as substantive evidence. The trial court asked the prosecutor if he "really want[ed] to do it" due to the closeness of the

case. The trial court continued that the prosecutor "may be putting reversible error into" the case. Further, the court warned, "I think you are gilding the lily. I think there's a possibility of reversible error. And I just think that you, you are treading on thin ice and I would caution you very seriously." The court also stated, "You [the prosecutor] understand you are playing with fire. That's the only thing I am telling you. But if you want it done, it's your case, God bless you." Thus, notwithstanding the trial court's misgivings about the issue, the trial court denied the defendant's objection, and the State proceeded on its perilous path.

On appeal, the defendant argues that the trial court erred by admitting the prior consistent statements of Flores and Antowan Lambert. Further, the defendant avers that the statements should not have been admitted as substantive evidence. In addition, the defendant contends that his due process rights were violated by the conduct of juror Larry Standfield.

■ Generally, a trial court's decision on whether to admit something into evidence will not be overturned on appeal absent an abuse of discretion. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 92 (1995). Specifically for the present case, prior consistent statements are generally not admissible. *People v. Williams*, 147 Ill. 2d 173, 227 (1991). However, prior consistent statements are admissible only to rebut a charge or inference that (1) the witness is motivated to testify falsely, so long as the witness told the same story *before* the motive came into existence; or (2) the witness' testimony is of recent fabrication, so long as the witness told the same story *before* the time of the alleged fabrication. *Williams*, 147 Ill. 2d at 227; *People v. Antczak*, 251 Ill. App. 3d 709, 715-16 (1993). In *Antczak*, this court examined the ambiguity of prior case law in setting forth the applicable test and determined that the absence of motive to testify falsely need not be shown where the evidence is offered to rebut the charge of recent fabrication. *Antczak*, 251 Ill. App. 3d at 715-16. Thus, the exceptions listed above should, indeed, be treated as separate exceptions. *Antczak*, 251 Ill. App. 3d at 715-16; see M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.14 (Supp. 1996).

■ Turning first to the prior consistent statement of Antowan Lambert, we determine that the statement was admissible for rehabilitative purposes. The record reveals that counsel for the defense attacked Antowan Lambert's credibility on cross-examination on two distinct bases. First, counsel suggested that Antowan Lambert's testimony was the product of a motivation to testify falsely in order to avoid the full scope of Antowan Lambert's own criminal responsibility for the murder pursuant to Antowan's plea agreement.

Second, the record reveals that counsel for the defendant also sought to persuade the jury that Antowan's testimony was suspect because of a recent fabrication. Specifically, counsel asked Antowan if he and Flores, who had finished testifying the day before and whom Antowan admittedly saw through the door of the courtroom while Antowan was testifying, allegedly making gestures to Antowan, were "pretty tight." Antowan agreed. The colloquy continued:

"Q. When is the last time you talked to [Flores] either in person or on the phone?
A. Last night.
Q. Did you call [Flores] last night?
A. Yes, I did.
Q. Lucio tell you that he testified yesterday?
A. Yes, he did.
Q. Have you ever told him that you were going to testify falsely here in court?
A. No, I haven't."

While Antowan answered in the negative to the final question, defense counsel's questions about Antowan's speaking to Flores the night before Antowan testified raised the inference that Antowan fabricated his testimony to comport with that of Flores. This is especially so in light of the allegations, which Antowan admitted were true, that Flores made gestures to Antowan during Antowan's testimony. Further, defense counsel also presented a letter during his cross-examination of Antowan. According to Antowan, the letter appeared as if "somebody wrote it and signed my signature." The full contents of the letter were not disclosed following an objection by the State after Antowan read somebody else's writing on the letter that stated, "Ricky check this out, I got this letter from Twon a few days—." However, the defense counsel's use of the letter during Antowan's impeachment again raised the inference that Antowan was being accused of a recent fabrication. Thus, Antowan's prior consistent statement, that is, his written statement given to the police on January 4, 1994, a date preceding the alleged recent fabrications, was properly admissible for rehabilitative purposes. *Antczak*, 251 Ill. App. 3d at 717.

■ We also determine that Flores' prior consistent statement was also admissible for rehabilitative purposes. However, we determine that the defense's cross-examination of Flores did not sufficiently raise the issue that Flores' testimony was of recent fabrication. The pertinent portion of the defense's cross-examination of Flores reads as follows:

"Q. How many times did you talk to [the prosecutor]?

A. Four or five times.
Q. How long did you talk each of these times?
A. Couple hours.
Q. Did you go over the exhibits?
A. Yup.

* * *

Q. You have gone over your testimony before today, haven't you?
A. No.
Q. No? He hasn't asked you questions before today?
A. Yeah, he asked me questions.
Q. Okay. And did you give him answers to those questions?
A. I answered with my statement.
Q. Right. Did you—did you answer those questions, some of them were the same ones he asked you today, weren't they?
A. Right.
Q. The statement, that's what you went over with [the prosecutor], isn't it?
A. He asked me questions and I answered them.
Q. And some of those were the same ones he asked you today so you have gone over those before, haven't you?
A. No, we went over how it was going to go in court."

This is the only portion of the defense counsel's cross-examination of Flores that may be said to remotely raise the charge of recent fabrication. The Appellate Court, First District, has held that a witness may be charged with a recent fabrication when counsel questioning that witness implies that the witness had rehearsed his testimony with prosecutors. *People v. Askew*, 273 Ill. App. 3d 798, 803-04 (1995); *People v. Ollins*, 235 Ill. App. 3d 158, 165 (1992). We disagree. The fact that a witness recently rehearsed his testimony with counsel does not imply that any "fabrication" occurred. Further, we take notice that most witnesses do, in fact, go over their testimony with counsel prior to trial. Thus, if we were to decide that this rehearsal implies that a recent fabrication occurred, the exception of "recent fabrication" would swallow the rule that prior consistent statements are generally inadmissible. *Williams*, 147 Ill. 2d at 227. Consequently, we determine that Flores' prior consistent statement was not admissible under the recent fabrication exception to the general rule of inadmissibility.

Nevertheless, we determine that Flores' prior consistent statement was admissible for rehabilitative purposes under the improper motive exception to the general rule of inadmissibility. Under this exception, a prior consistent statement is admissible, so long as the presently imputed motive to testify falsely did not exist at the time

of the prior statement, to rebut the implication that the witness has a motive to testify falsely. *Williams*, 147 Ill. 2d at 227; *Antczak*, 251 Ill. App. 3d at 715-16. The record demonstrates that defense counsel's cross-examination of Flores included extensive questioning of his expectations of leniency for his involvement in Doss' death in light of a plea agreement. The issue we face, then, is whether Flores' motive to testify falsely also existed at the time he made his written statement to the police. If the motive existed at that time, then the admission of Flores' prior written statement was in error. *Williams*, 147 Ill. 2d at 227; *Antczak*, 251 Ill. App. 3d at 715-16.

Analysis of the case law in this area leads us to conclude that Flores' written statement was admissible for rehabilitative purposes under this exception. In *People v. Powell*, 53 Ill. 2d 465, 469 (1973), the witness in question was a codefendant in whose automobile the murder weapon had been found. After cross-examination about a plea agreement that the witness had made in July 1969, the State introduced a prior statement of the witness, given in March 1969. In March, according to the witness, "no offer of leniency had been made." *Powell*, 53 Ill. 2d at 475. Our supreme court found no error in the admission of the witness' March 1969 statement. *Powell*, 53 Ill. 2d at 475.

Similarly, in *Williams*, where the witness faced perjury charges based on her recantation of her grand jury testimony during subsequent preliminary proceedings at the defendant's trial but reaffirmed her grand jury testimony when she actually testified at the defendant's trial, our supreme court rejected the argument that the witness must have considered that, "given the conduct of police and prosecutors towards her, her best strategy was to cooperate with the authorities by fabricating a version of events." *Williams*, 147 Ill. 2d at 227. The court stated that it had rejected a "similar argument upon a similar series of facts" in *People v. Titone*, 115 Ill. 2d 413, 423 (1986). *Williams*, 147 Ill. 2d at 227.

In *Titone*, the witness in question had *not* been "offered any deal or threatened by the police in order to elicit the [prior consistent] statement." *Titone*, 115 Ill. 2d at 423. Based on the record in that case, our supreme court stated that it was "unable to say that in admitting the statement the [circuit] court erred." *Titone*, 115 Ill. 2d at 423.

Also, in *People v. Ashford*, 121 Ill. 2d 55, 71 (1988), the inference was raised during cross-examination that the witness at issue was motivated to lie because of expected leniency on an unlawful restraint charge. The record in that case showed that the possibility of an agreement to dismiss the charge, in exchange for the witness'

truthful statements at the defendant's trial, was not even raised "until sometime after he had made the statement, and the defense never sought at trial to show that the statement was tendered with any such expectation." *Ashford*, 121 Ill. 2d at 71.

In *People v. King*, 165 Ill. App. 3d 464 (1988), this court declined to follow the reasoning of *People v. Green*, 125 Ill. App. 3d 734 (1984), *overruled by People v. Schutz*, 201 Ill. App. 3d 154, 161 (1990). In *King*, we determined the *Green* reasoning to be that "the statement of a codefendant is inherently unreliable if given at the time that the authorities have identified the codefendant as a suspect in the crime, so long as the statement places the onus of the crime on the defendant and away from the individual making the statement." *King*, 165 Ill. App. 3d at 468. This is precisely the argument that the defendant makes in the case at bar. In *King*, even though the trial court did not specifically so state, we found that the trial court "found that a motive to testify falsely had not arisen prior to [the witness] making his first statement to the police." *King*, 165 Ill. App. 3d at 468.

In the present case, the record demonstrates that Flores had not been "offered any deal or threatened by the police in order to elicit the [prior consistent] statement." See *Titone*, 115 Ill. 2d at 423. Flores specifically denied that there were any agreements made with the police or State's Attorney's office before he signed his written statement. Further, the record does not demonstrate that the police ever brought up the subject of leniency with Flores. Detective Scott denied that any deal was made with Flores in exchange for his statement. Thus, we determine that Flores' written statement would have been properly admissible for rehabilitative purposes under the improper motive exception to the rule that prior consistent statements are generally inadmissible.

In sum, we conclude that the prior consistent statements of both Antowan Lambert and Flores would have been properly admissible for rehabilitative purposes. However, the record clearly demonstrates that both statements were entered for substantive purposes.

■ We determine that the trial court erroneously admitted both Antowan's and Flores' prior consistent statements as substantive evidence. Illinois follows the common-law rule (see S. Gard, Jones on Evidence § 26:28, at 240 (6th ed. 1972) (and cases cited therein)) that, where admission is allowed, a prior consistent statement is permitted solely for rehabilitative purposes and not as substantive evidence. *People v. Weinger*, 101 Ill. App. 3d 857, 874 (1981); *People v. Hudson*, 86 Ill. App. 3d 335, 340 (1980); *People v. Hahn*, 39 Ill. App. 3d 969, 978-79 (1976); R. Steigmann, Illinois Evidence Manual § 23:37, at 310 (3d ed. 1995); Annotation, *Admissibility of Impeached Witness' Prior*

*Consistent Statement—Modern State Criminal Cases*, 58 A.L.R.4th 1014 (1987 & Supp. 1996) (hereinafter 58 A.L.R.4th 1014). The rationale for this common-law rule is that corroboration by repetition " 'preys on the human failing of placing belief in that which is most often repeated.' " *Hudson*, 86 Ill. App. 3d at 340, quoting *People v. Sanders*, 59 Ill. App. 3d 650, 654 (1978); see also *People v. Tidwell*, 88 Ill. App. 3d 808, 811 (1980). In other words, "mere repetition does not imply veracity." *Coltrane v. United States*, 418 F.2d 1131, 1140 (D.C. 1969); see also 4 J. Wigmore, Evidence § 1126 (Chadbourn rev. ed. 1972); 81 Am. Jur. 2d *Witnesses* § 1012 (1992). Credibility should not depend upon the number of times a witness has repeated the same story, as opposed to the inherent trustworthiness of the story. *George v. State*, 270 Ark. 335, 338, 604 S.W.2d 940, 942 (1980); 81 Am. Jur. 2d *Witnesses* § 1012 (1992). Where the common law applies and a prior consistent statement is admitted into evidence, an instruction from the court instructing the jury of its limited rehabilitative purpose is proper. *People v. Wurster*, 83 Ill. App. 3d 399, 408 (1980); 81 Am. Jur. 2d *Witnesses* § 1016 (1992).

The State's reliance upon *Williams*, 147 Ill. 2d 173, for the proposition that the Illinois common-law position has changed is misplaced. In *Williams*, as discussed earlier, a witness who had previously given grand jury testimony recanted that testimony during preliminary proceedings at the defendant's trial and, therefore, faced perjury charges when she actually testified at the defendant's trial. *Williams*, 147 Ill. 2d at 206-07, 226. The witness then testified that her grand jury testimony was, indeed, correct. *Williams*, 147 Ill. 2d at 207. After cross-examination, the State then introduced the transcript of the witness' grand jury testimony as substantive evidence. *Williams*, 147 Ill. 2d at 207. Our supreme court determined that the admission of the grand jury testimony was not error. *Williams*, 147 Ill. 2d at 226-28. However, the court did not discuss the issue, which was apparently never raised, that the transcript of the grand jury testimony should only have been admitted for rehabilitative purposes, not as substantive evidence. Thus, *Williams* cannot be·said to overrule the tenet of this state that the evidence is permissible only for rehabilitative purposes. Similarly, neither can *People v. Powell*, 53 Ill. 2d 465 (1973), be read to overrule the same tenet. In the present case, where the defense raised the objection about the purposes of the prior consistent statements at trial, in a post-trial motion, and in this appeal, the issue has not been waived.

Indeed, while not explicitly so holding, our supreme court has affirmed the prevalence of the common-law rule in this state. In *People v. Henderson*, 142 Ill. 2d 258 (1990), our supreme court set forth that,

while it was error for the trial court in that case to admit a prior consistent statement into evidence, the error was not prejudicial because, in part, the testimony concerning the prior consistent statement was "general, not specific, in that [the witness] said he told the police 'something like' what he had testified to; no portion of [the witness'] statement to the police was admitted into evidence." *Henderson*, 142 Ill. 2d at 312. If Illinois did not follow the common-law rule, then it would not have mattered in *Henderson* whether the witness' statement, as opposed to the mere acknowledgement that the statement existed, was admitted into evidence.

None of the cases that the prosecutor set forth at trial stand for the proposition which the prosecutor stated they did, that is, that the prior consistent statement may be admitted substantively. See *Powell*, 53 Ill. 2d 465; *People v. Gray*, 209 Ill. App. 3d 407 (1991); *King*, 165 Ill. App. 3d 464; *People v. Link*, 100 Ill. App. 3d 1000 (1981). Instead, none of these cases differ from the common-law rule that prior consistent statements be admitted, if at all, for purposes of rehabilitation. *Powell*, 53 Ill. 2d at 474-75; *Gray*, 209 Ill. App. 3d 407 (dealing exclusively with prior *inconsistent* statements); *King*, 165 Ill. App. 3d at 467; *Link*, 100 Ill. App. 3d at 1006. The trial court explicitly recognized this during the trial, but erroneously allowed the prosecutor to admit the evidence substantively anyway, in contravention of the common-law rule. See *Weinger*, 101 Ill. App. 3d at 874; *Hudson*, 86 Ill. App. 3d at 340; *Hahn*, 39 Ill. App. 3d at 978-79; R. Steigmann, Illinois Evidence Manual § 23:37, at 310 (3d ed. 1995).

We note that the common-law rule has been changed in most jurisdictions that have adopted the Federal Rules of Evidence. This is because Federal Rule 801(d)(1)(B) has been changed to recognize the substantive value of prior consistent statements, when offered to rebut a charge of recent fabrication or improper influence or motive, by excluding them from the definition of hearsay. Fed. R. Evid. 801(d)(1)(B). The advisory committee, which suggested the change, gave two reasons for departing from the common law. Specifically, the advisory committee stated that "once the opponent has opened the door by attacking the witness's credibility, it is not unfair to permit the party to bolster its witness by presenting additional consistent evidence." See J. Weinstein, Evidence, U.S. Rules, at 801—187, 801—188 (1996). Further, the advisory committee suggested that, "as a practical matter, the jury in all probability would misunderstand or ignore a limiting instruction anyway, so there is no good reason for giving one." J. Weinstein, Evidence, U.S. Rules, at 801—187, 801—188 (1996), citing Comment, *Hearsay Under the*

*Proposed Federal Rules: A Discretionary Approach,* 15 Wayne L. Rev. 1077, 1092-93 (1969). We disagree with the advisory committee's reasoning. As stated above, allowing such testimony as substantive evidence preys on the human failing that mere repetition implies veracity. *Hudson,* 86 Ill. App. 3d at 840; 58 A.L.R.4th 1014. Moreover, we believe that juries understand and follow instructions from the court. See *Richardson v. Marsh,* 481 U.S. 200, 206, 95 L. Ed. 2d 176, 185, 107 S. Ct. 1702, 1707 (1987); *People v. Sandoval,* 135 Ill. 2d 159, 192-93 (1990); *People v. Johnson,* 199 Ill. App. 3d 577, 583 (1990). We are not alone in disagreeing with the advisory committee. In some states that have adopted a version of the Federal Rules of Evidence, the state legislature has decided not to adopt this change from the common-law rule. Me. R. of Evid. 801(d)(1), Advisor's Notes; Mich. R. of Evid. 801(d)(1)(b); J. Weinstein, Evidence, U.S. Rules, at 801—209 through 801—211 (1996).

In sum, because this state still adheres to the common-law rule that, where admission is allowed, a prior consistent statement is permitted solely for rehabilitative purposes and not as substantive evidence (*Weinger,* 101 Ill. App. 3d at 874; *Hudson,* 86 Ill. App. 3d at 340; *Hahn,* 39 Ill. App. 3d at 978-79; R. Steigmann, Illinois Evidence Manual § 23:37, at 310 (3d ed. 1995); 58 A.L.R.4th 1014) and because the record clearly demonstrates that the statements in the case at bar were entered substantively, we determine that the trial court erroneously admitted the prior consistent statements.

■ We must now determine whether the erroneous admission of the prior consistent statements of Antowan Lambert and Flores as substantive evidence constituted reversible error. Under the particular facts of this case, we determine that it did constitute reversible error. The law is clear that, "[i]f there is a reasonable probability that erroneously admitted testimony contributed to a conviction, the error cannot be considered harmless." *Hudson,* 86 Ill. App. 3d at 340. Further, "[t]he admission of a [prior consistent] statement used to bolster the sagging credibility of a witness is reversible error when the witness' in-court testimony is crucial." *People v. Smith,* 139 Ill. App. 3d 21, 34 (1985); see also *Moore v. Anchor Organization for Health Maintenance,* 284 Ill. App. 3d 874 (1996). Also, "[e]ven if sufficient competent evidence was introduced to establish a defendant's guilt beyond a reasonable doubt, there is still reversible error when the improper admission clouds the evidence to such a degree that it is impossible to tell whether the jury relied on it." *Smith,* 139 Ill. App. 3d at 34.

In *Smith,* reviewing the issue under the plain error doctrine, the court found that the erroneous admission of a prior consistent state-

ment constituted reversible error where the witness who made the statement was the only eyewitness to the crime, where the introduction of that witness' prior consistent statement was important in making his testimony more believable, and where the jury's reliance on the statement was made more likely by the fact that the prosecutor mentioned it during closing argument. *Smith*, 139 Ill. App. 3d at 34.

We agree with the dissent's admonition that the prejudicial nature of evidence must be judged on a case-by-case basis. In the present case, similar to *Smith*, Antowan Lambert and Flores were the only eyewitnesses to the crime who testified for the State. Indeed, their testimonies were even more important than the witness' testimony in *Smith* because, in the present case, Antowan Lambert's and Flores' testimonies were the *only* evidence that directly linked the defendant to the crime. Also similar to *Smith*, the introduction of the prior consistent statements was important in making Antowan Lambert's and Flores' testimonies more believable. As the State admits in its appellate brief, the defense presented "no evidence at trial, but instead argued that the People had not proven their case beyond a reasonable doubt. *** The gist of the majority of defendant's cross-examination [of Antowan Lambert and Flores] and closing argument was that Flores and Antowan lied at trial." In response to the defense, the State entered the prior consistent statements as substantive evidence and read them to the jury to close its case in chief. As for the State's closing argument, the erroneously admitted written statements were repeatedly emphasized, similar to the facts in *Emerson*, 97 Ill. 2d 487, where in closing argument the prosecutor referred four times to an erroneously admitted prior consistent statement. The supreme court held there that "[t]his was clearly improper and erroneously emphasized the corroborative effect of the statement which should not have been admitted." *Emerson*, 97 Ill. 2d at 501. The same holds true in the present case. The dissent argues that prior consistent statements should be handled the same as prior inconsistent statements insofar as they are used and emphasized in closing arguments. We agree. If a prior inconsistent statement is allowed into evidence only for the limited purpose of impeachment, *not as substantive evidence*, a limiting instruction must be given, and the State may not use that testimony as substantive evidence in closing argument. See *People v. Bradford*, 106 Ill. 2d 492, 501-02 (1985). In this case, a limiting instruction should have been given, and the State should not have argued the prior consistent statement as substantive evidence. This is especially true where, as here, the trial court itself stated that the case was "close" and that the prosecutor

risked "gilding the lily" and reversible error by asking that the prior consistent statements be admitted substantively.

We are aware that the statements were cumulative (see *Ashford*, 121 Ill. 2d at 72) and were attested to by the makers of the statements, as opposed to third parties (see *Henderson*, 142 Ill. 2d at 311), which lessens, to a certain extent, the damage of their admission.

However, a closer reading of *Henderson* is instructive. In *Henderson*, our supreme court found that the admission of a statement acknowledging the existence of a prior consistent statement was error, but was not prejudicial, in part, because "no portion of [the witness'] statement to the police was admitted into evidence." *Henderson*, 142 Ill. 2d at 312. In the case at bar, the statements not only were admitted into evidence, but also were emphasized repeatedly during closing arguments in an otherwise close case. If prejudice cannot be found on the facts of this case, we doubt it will ever be found.

After considering the record as a whole and the relative closeness of this case, we determine that the admission, for substantive purposes, of the key witnesses' prior consistent statements raises a reasonable probability that the erroneously admitted testimony contributed to the defendant's conviction. See *Hudson*, 86 Ill. App. 3d at 340. At the least, the improper admission of the statements "clouds the evidence to such a degree that it is impossible to tell whether the jury relied on it." *Smith*, 139 Ill. App. 3d at 34. Consequently, we grant the defendant's request to reverse the conviction and remand this cause for a new trial.

■ In addition, we note that the defendant's rights under the due process clause of both the Illinois and United States Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) were violated by the trial court's actions in the case at bar. Where an error that occurs during a criminal defendant's trial impinges upon the integrity of our judicial system, reversal is required "regardless of the weight of the other evidence." *People v. Thomas*, 123 Ill. App. 3d 857, 867 (1984); see also *People v. Baynes*, 88 Ill. 2d 225, 244 (1981). In our case, despite warning the prosecutor of the possibility of inserting reversible error into this case by attempting to admit the prior consistent statements as substantive evidence, the trial court abdicated its role by allowing the prosecutor to enter the evidence substantively and stated, "if you [the prosecutor] want it done, it's your case, God bless you." The job of the trial court is to rule on questions of law, not to grant absolution to attorneys to disregard rules of evidence. The trial court judge's statement indicates that he failed to realize that the evidentiary rulings were *his*, not the prosecutor's. The dissent can find no precedent for finding reversible error when a court

fails to give a limiting instruction regarding the rehabilitative use of a prior consistent statement. This may be a case of first impression, as this may be the first case in which a court completely abdicated its role in presiding over a trial. Error is not diminished by the possibility that no prior judge abdicated his responsibilities to the prosecutor. As the reviewing court in this case, we are required to reverse regardless of the weight of the evidence. See *Baynes*, 88 Ill. 2d at 244; *Thomas*, 123 Ill. App. 3d at 867. If we were to rule otherwise, we would be derelict in assuring that each defendant is given a fair trial. The failure to enforce the law invites anarchy. In the present case, this tenet requires us to reverse the defendant's conviction. Given the totality of the presentation of this case, we have serious doubts that the integrity of the judicial system would be upheld if we affirmed the verdict on the theory of a lack of prejudice. Nothing less than the integrity and reputation of the judicial process, as well as the defendant's due process rights, are at stake.

■ The integrity of the trial court's judgment is further challenged by the conduct of Larry Standfield, a juror in this case. During *voir dire*, Standfield managed to avoid mentioning that he had been arrested, though not convicted, for possession of a controlled substance and unlawful use of weapons and that his ex-wife was acquitted of murder charges while they were still married. This occurred after he was asked about his juror profile card, on which he had marked that he or a family member had been charged with, convicted of, or a victim of a crime. Standfield further failed to disclose to the court that he had been approached during the trial by a life-long acquaintance, who also happened to be the defendant's girlfriend, and was offered money to vote for a particular outcome of the case. (It is unclear from testimony taken during the hearing on defendant's post-trial motion whether Standfield was offered money for a verdict of guilty or a verdict of not guilty.)

Although an accused's right to a trial by an unbiased jury is a basic right, a juror's failure to reveal potentially prejudicial information or giving false testimony during *voir dire* does not automatically entitle a defendant to a new trial; actual prejudice to the defendant must be proved. *People v. Potts*, 224 Ill. App. 3d 938, 946 (1992). Similarly, improper juror contact will result in a new trial only if prejudice is shown. See *People v. Curtis*, 7 Ill. App. 3d 520, 525 (1972). We need not determine here whether juror Standfield's reticence regarding his criminal past and his contact with someone attempting to influence the outcome of the trial resulted in prejudice sufficient to warrant reversal on its own, as the other issue in this case demands reversal and remand. However, the taint attached to juror Stand-

field, on top of the improper use of the prior consistent statements, confirms that the defendant was denied a fair trial. Therefore, we reverse the judgment of the circuit court of Winnebago County, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HUTCHINSON, J., concurs.

JUSTICE DOYLE, dissenting:

I agree with my colleagues that the prior consistent statements of Lucio Flores and Antowan Lambert were admissible evidence. Because Illinois apparently adheres to the common-law approach, I further agree that it would have been preferable for the trial court to have instructed that the prior consistent statements were being admitted for "rehabilitative purposes." However, I strongly disagree that the court's failure to do so resulted in any discernable prejudice that would warrant our reversing defendant's conviction.

In my view, the debate over characterizing the statements as either substantive or rehabilitative, in the context of the present facts, is merely a lexical tempest in a legal teapot having little or no practical bearing on the outcome of the trial. There are cases, of course, in which the outcome may pivot on whether a given item of evidence will be viewed as substantive, as where the evidence in question supplies an essential link in the State's chain of required proof. However, this is not such a case.

Here, as our majority has determined, it is reasonably clear that the jurors were correctly permitted to hear and consider the witnesses' prior consistent statements in evaluating credibility. There is no suggestion that the prior statements contained any facts other than those cumulative to the witnesses' trial testimony. Obviously, both witnesses were available for cross-examination. Although the judge informed counsel that the prior statements would be admitted as substantive evidence, no such characterization of the evidence was ever communicated to the jury. Accordingly, the only possible error could be in the judge's failure to give a limiting instruction informing the jurors that the prior consistent statements could be considered for "rehabilitative" purposes only.

One must wonder how such an instruction, had it been given, could have materially affected the jurors' analysis of the evidence. If the word "rehabilitative" means that the jurors would be permitted to consider the prior statements only as arguably buttressing the

credibility of the witnesses' testimony, is that not exactly what was occurring anyway even in the absence of a limiting instruction? If the majority is concerned that the jurors could somehow view the prior statements as having the same prominence or stature as the witnesses' trial testimony, what harm could there have been so long as the prior statements and the testimony were identical?

Apparently, it is the perceived evil of improper repetition of the testimony believed to result from the trial court's mischaracterization of the prior statements as substantive evidence which the majority sees as requiring reversal. I disagree with this analysis, in part, because it incorrectly implies that evidence admitted for a limited purpose may not be legitimately communicated to the jury and emphasized in closing argument. No one would suggest that the salient portion of a prior *inconsistent* statement, admitted for impeachment, could not be communicated to the jury or repeatedly highlighted in argument. I am aware of no authority for treating a prior consistent statement in any different manner. Accordingly, regardless of whether the prior consistent statements here were identified as substantive or rehabilitative, there was no error in the fact that they were read to the jury or emphasized by the State in argument.

All of the decisions cited by the majority to support its position that defendant was prejudiced by repetition of the statements are cases in which it was error to admit the prior statements for *any* purpose. In those cases, the reviewing courts correctly observed that the evil of erroneously repeating the hearsay-violative prior consistent statements is that a witness' credibility should not be enhanced by the fact that the witness has previously repeated the same version out of court. However, when, as here, the prior consistent statements are received as an exception to the hearsay rule, the very purpose of doing so is to repair or enhance the credibility of a witness whose credibility has been drawn into question by the implication of recent fabrication or a motive to falsify.

Because the cited cases involve prior consistent statements erroneously admitted for the purpose of enhancing credibility, they provide no authority for the majority's position. Clearly, there is a vast difference between improperly allowing a witness' testimony to be bolstered through the erroneous admission of hearsay evidence and the present question of omitting to inform a jury of the limited rehabilitative use of evidence which has been properly admitted as an exception to hearsay.

The prejudicial nature of evidence must be judged on a case-by-case basis. *People v. Henderson*, 142 Ill. 2d 258, 311 (1990). I am aware

of no Illinois authority directly analyzing whether, under the present circumstances, a court's failure to give a "rehabilitative use" limiting instruction could constitute reversible error. It is recognized that, under the Federal Rules of Evidence, no such limiting instruction is necessary. Fed. R. Evid. 801(d)(1)(B). In my opinion, the trial court's omission, here, constituted, at most, only a harmless error.

Nor am I persuaded that the trial court's handling of this matter impinged upon the integrity of the judicial system or violated defendant's federal or state constitutional due process rights. I wholeheartedly agree with our majority that a judge must never abdicate his or her role and surrender to counsel for either side the power to control the admission or exclusion of evidence. However, a reasonable interpretation of this record does not plainly establish that any such abdication occurred. It is more probable that the judge intended his comments as a warning to the prosecutor that, notwithstanding the Federal Rules of Evidence, accepting the State's position would present a difficult and risky issue of uncertain appellate resolution. There is no indication that the judge did not apply his independent judgment in ruling on the objection or that he deliberately entered inadmissible evidence at the prosecutor's behest. I do not regard the judge's comments as providing a basis for reversal.

As to the issue of juror misconduct, I note that the trial court conducted an evidentiary hearing that elicited the juror's explanation for allegations that he misstated or withheld information. Concerning his failure to state that his former wife had been acquitted of murder, in response to a *voir dire* inquiry concerning criminal involvement of "family members," the juror testified that he had been divorced from her for four or five years. Reasonable minds might differ as to whether the inquiry was sufficiently specific to obligate the juror to disclose the acquittal of a former member of his family.

It was similarly within the trial court's discretion to decide whether the juror had deliberately concealed a material aspect of his record of criminal activity. As a practical matter, communication between prospective jurors and the court is well known to be an imperfect process. The accuracy or completeness of a venireman's response to a question can be affected by a variety of factors, such as the juror's comprehension or interpretation of the question, whether sufficient time is allowed for the venireman to reflect and render a complete response before the questioning shifts to a different subject, et cetera. The potential for subsequent discovery of discrepancies in *voir dire* is great, and perfection is rarely attainable. Here, the court found the juror's explanation of the alleged irregularity to be credible. Based upon the record presented, I would not overturn that finding.

Concerning the matter of the juror's contact with defendant's girlfriend, the trial court heard testimony from both of these persons. The girlfriend testified that her comment was made jokingly and that the juror "blew off" the comment. The juror testified that he understood that the girlfriend was suggesting that he could be paid to find defendant *not guilty* and that her comment had no influence on his verdict. Assuming the trial court found the juror's version to be credible, a determination that the incident was harmless would not have been an abuse of discretion. The trial court has substantial discretion in determining whether an improper contact with a juror has caused prejudice to the defendant. *People v. Harris*, 123 Ill. 2d 113, 132 (1988). It is my opinion that there is no clear demonstration of juror misconduct sufficient to warrant a reversal of defendant's conviction.

I would affirm the judgment of the circuit court.