2021 IL App (2d) 190797-U
No. 2-19-0797
Order filed August 16, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1678 |
| ALEJANDRO ANDRADE, | ) ) ) | Honorable Kathryn D. Karayannis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: At defendant's trial where he claimed self-defense for stabbing his brother in a domestic fight, the trial court properly excluded audio of bodycam footage from the officers as they spoke with defendant and his brother after the dispute. The evidence of their respective demeanors was not, as defendant claimed, relevant circumstantial evidence as to who was the aggressor in the quarrel.

¶ 2    Following a jury trial, defendant, Alejandro Andrade, was convicted of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2016)) and one count of aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2016)) and sentenced to 24 months' probation. He

appeals, contending that the trial court erred by barring him from playing for the jury portions of the audio from two officers' bodycam recordings. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      At trial, Wilfrido Lorenzo testified that he is defendant's brother. On September 4, 2017, there was a family cookout at the home the brothers shared. Defendant was out of work at the time. Lorenzo had tried to get defendant hired by his employer but had recently learned that defendant would not be hired.

¶ 5      Sometime during the day of the cookout, Lorenzo and defendant went to the liquor store. During the ride, Lorenzo told defendant that his employer was not going to hire him. Defendant became angry and began driving erratically. He was still upset when they returned home, but the two were separated during most of the party because Lorenzo was cooking.

¶ 6      After everyone else had left, defendant and Lorenzo were cleaning up. When they had finished, they were in the garage. Lorenzo set out a chair for defendant, offered him a beer, and asked if he was still mad at him. They initially had a civil conversation, but defendant began to get louder and started cursing. Lorenzo closed the overhead door so as not to disturb the neighbors. Defendant appeared highly intoxicated.

¶ 7      Defendant began pushing Lorenzo across the garage. When Lorenzo's back was against the wall, defendant lunged at him again. Lorenzo pushed back and defendant fell into some bicycles. Defendant got back up, went after Lorenzo again, and the two exchanged punches for a couple of minutes. At some point, defendant fell to his knees. Lorenzo told him not to get back up and walked away.

¶ 8      Thinking the fight was over, Lorenzo left the garage and walked toward the rear of the house. Out of the corner of his eye, he saw defendant approaching. Believing that defendant was

going to punch him again, Lorenzo turned around and raised his arm. He then realized that defendant had a knife. Lorenzo grabbed defendant's arm and punched him in the nose. Lorenzo thought that the knife fell out of defendant's hand. Lorenzo turned and walked up the stairs to the house. He saw defendant's reflection in the patio door. Thinking that defendant was trying to stab him again, Lorenzo turned and kicked defendant in the face, sending him into a flower bed. When Lorenzo got inside the house, he realized his shirt was wet. His girlfriend told him that he had been stabbed. After changing his shirt, Lorenzo saw that the police and an ambulance had arrived. He had not called them. Lorenzo was willing to speak to the police and went to the door to meet them. At the time, due to adrenaline, Lorenzo did not feel the stab wound and believed he was okay. He "remember[ed] telling them that [he] didn't want to go to a certain hospital [that] they were trying to send [him] to." He was upset because there "was a lot that just went on, especially with [his] brother," but he was not angry with the police. Lorenzo told the police that he did not have the right to let them into the house because it was not his house. Lorenzo was eventually transported to a hospital, where he received stitches for his wound. At the hospital, the police asked Lorenzo if he wanted to provide a written statement. He refused and told the police that he did not want to press charges.

¶ 9    Officer Ryan Nelis testified that he responded to the scene. He encountered defendant walking down the driveway. He had injuries to his face and blood coming from his nose. Defendant had difficulty walking, and Nelis believed that he was intoxicated.

¶ 10    Nelis went to the house to speak to Lorenzo while another officer spoke with defendant. Nelis saw a stab wound on Lorenzo's left shoulder. Lorenzo was uncooperative. He did not want to press charges, go to the hospital, or allow the officer to enter the house. Lorenzo did eventually go to the hospital but continued to be uncooperative.

¶ 11    Defendant testified that he got into an argument with Lorenzo about 30 minutes before the cookout ended. Afterward, while defendant was cleaning the garage, Lorenzo entered and closed the overhead garage door. Because of their prior argument, defendant felt uncomfortable with Lorenzo in the garage. When Lorenzo grabbed two chairs and set them down across from each other, defendant decided to leave. Lorenzo then rushed at defendant, shoulder-bumped him, and prevented him from leaving the garage.

¶ 12    When defendant attempted to physically move Lorenzo out of the way, the latter pushed him so that he fell into some bicycles. As defendant tried to get up, Lorenzo punched him in the face, causing his nose to bleed. Defendant tried to crawl away as Lorenzo punched him repeatedly in the back of the head. Defendant asked Lorenzo over and over to stop hitting him, but he continued.

¶ 13    As defendant was on the ground, he came across his knife, which had been knocked to the floor. Defendant picked up the knife and, as Lorenzo swung to hit him again, he swung the knife at Lorenzo. Lorenzo ran into the house, and defendant used the phone in the garage to call 911. The jury heard a recording of the 911 call.

¶ 14    Defendant's sister, Iraida Andrade, testified that Lorenzo had spoken to her about what happened. Lorenzo told her that his argument with defendant concerned Lorenzo's baby's mother. Lorenzo said that he got on top of defendant and kicked him while he was on his hands and knees.

¶ 15    Officer Sean Callahan testified that, as he responded to the scene, he encountered defendant bleeding and stumbling down the driveway. Callahan helped defendant to sit on the curb and called for an ambulance.

¶ 16    During the defense case, a portion of Callahan's bodycam footage from the night in question was played for the jury. The video was played without audio. The trial court denied

defendant's request to play portions of the audio from Nelis's and Callahan's bodycams. The court found that the statements on the audio were either hearsay that was not subject to an exception or impermissible collateral impeachment.

¶ 17    The jury was instructed on self-defense. It found defendant guilty of two counts of domestic battery and one count of aggravated battery. The court sentenced him to 24 months' probation. Defendant timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant contends that the trial court erred by barring the audio clips from Nelis's and Callahan's bodycams. He argues generally that "[b]ody cameras are arguably the best source of unbiased information available when police interact with people at the scene of a crime." He contends that the audio of Nelis's interaction with Lorenzo was relevant because his "tone and mannerisms," along with his reluctance to allow the police into his home and to go to the hospital, were evidence that he was the initial aggressor in the fight. See *People v. Frazier*, 2019 IL App (1st) 172250, ¶ 40 (a defendant acts in self-defense when, *inter alia*, he is not the initial aggressor). Defendant contends that the evidence was not hearsay because he was not offering it to prove the truth of the matters asserted, *e.g.*, that Lorenzo did not want to go to the hospital. Defendant emphasizes that he would not have wanted to introduce the audio to prove the truth of Lorenzo's statements, because in some portions Lorenzo blamed defendant for starting the fight. Alternatively, defendant contends that the statements were admissible as excited utterances, given that Lorenzo's agitation was likely the result of the fight.

¶ 20    Conversely, defendant contends that the audio of his calm and cooperative demeanor while speaking with Callahan was proof that he was not the initial aggressor. He argues alternatively that the statements qualified as excited utterances.

¶ 21    The State responds as follows.  Evidence of the combatants' respective demeanors after the fight was not relevant to prove who was the initial aggressor.  Moreover, the evidence was hearsay and not admissible as an excited utterance.  Defendant's statements on the audio were similar to his trial testimony and thus were inadmissible prior consistent statements.  Finally, the evidence was cumulative, given that defendant, Lorenzo, and the officers testified to much of the same information.

¶ 22    Evidentiary rulings are generally within the trial court's sound discretion, and we will not disturb such rulings absent an abuse of that discretion.  *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).  An abuse of discretion occurs only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the trial court's view.  *Id.*  Defendant contends, however, that we should review the trial court's ruling *de novo* because the " 'trial court's exercise of discretion has been frustrated by an erroneous rule of law.' "  *Id.* (quoting *People v. Williams*, 188 Ill. 2d 365, 369 (1999)).  We disagree.  Here, as in *Caffey*, the trial court based its ruling on the specific facts of the case and not on a broadly applicable rule.  Thus, we review its decision for an abuse of discretion.

¶ 23    Defendant argues that the body camera evidence, recorded immediately after the event, was highly probative.  Section 10-30 of the Law Enforcement Officer-Worn Body Camera Act (50 ILCS 706/10-30 (West 2016)) provides that body camera recordings "may be used as evidence in any administrative, judicial, legislative, or disciplinary proceeding."  However, nothing in this section manifests an intent to override the normal rules of evidence regarding relevancy and hearsay.

¶ 24    First, as to Lorenzo's interaction with Nelis, we agree with the State that evidence of Lorenzo's demeanor after the fight was simply not relevant to whether he was the initial aggressor.

In deciding the admissibility of evidence, "[t]he court must ask whether the proferred evidence fairly tends to prove or disprove the offense charged and whether that evidence is relevant in that it tends to make the question of guilt more or less probable." *People v. Wheeler*, 226 Ill. 2d 92, 132 (2007). Moreover, the trial court has the discretion to reject even relevant evidence if it has little probative value due to its remoteness, uncertainty, or unfairly prejudicial nature. *Id.*; see also Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 25    It is not surprising that Lorenzo would be upset after a fight in which he had been stabbed. Indeed, in arguing that the Lorenzo's statements were excited utterances, defendant concedes that "the fight between [Lorenzo] and [defendant] was an event 'sufficiently startling' to elicit an exited [*sic*] utterance." Thus, Lorenzo's agitation after the fight does not make it more or less likely that he was the initial aggressor. It is at least equally likely that his agitation was the result of simply the fight itself. Yelling, by itself, "is no indication of violent behavior." *People v. Cruzado*, 299 Ill. App. 3d 131, 137 (1998).

¶ 26    Similarly, that Lorenzo was reluctant to go to the hospital or to allow the police into his home in the early morning hours simply has nothing to do with whether he started the fight sometime earlier. Even if he were the victim (which he claimed he was, in speaking with Nelis), Lorenzo might not have wanted any further inconvenience.

¶ 27    Further, Lorenzo's statements to Nelis did not qualify as excited utterances. For a statement to be admissible under the excited-utterance exception there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, an absence of time for the declarant to fabricate a statement, and a statement relating to the circumstances of the occurrence. Ill. R. Evid. 803(2) (eff. Sept. 28, 2011); *People v. Busch*, 2020 IL App (2d) 180229, ¶ 41. An excited utterance is admissible as an exception to the hearsay rule and, as such, is offered

to prove the truth of the matter asserted. See Ill. R. Evid. 801(c) (eff. Oct. 15, 2015) (hearsay is an out-of-court statement offered to prove the truth of the matter asserted); see also *People v. Tenney*, 205 Ill. 2d 411, 432-33 (2002).

¶ 28    Whether a statement is admissible as an excited utterance depends upon the totality of the circumstances. *People v. Williams*, 193 Ill. 2d 306, 352 (2000). Such an analysis encompasses several factors, including the amount of time that has passed since the incident, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest. *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). The key inquiry, however, is "whether the statement was made while the excitement of the event predominated." (Internal quotation marks omitted.) *Id.*

¶ 29    Many of Lorenzo's statements to Nelis did not relate to the occurrence itself but to collateral issues such as whether Lorenzo would go to the hospital, and thus they did not meet the elements of an excited utterance. Moreover, in other portions of the audio, Lorenzo blamed defendant for starting the fight. Hence, under defendant's theory of the case, Lorenzo's statements were not unreflecting accounts of the incident but, rather, had been fabricated. Because the statements were not offered for their truth, a hearsay exception does not apply.

¶ 30    In any event, we agree with the State that the evidence was essentially cumulative. Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) states:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 31    Lorenzo testified that he was upset after the fight, that he did not want the police to go inside the house, and that he argued with Nelis about going to the hospital.  Nelis, too, testified that Lorenzo was upset and uncooperative.[1]  Thus, the recording was cumulative of other properly admitted evidence, and the trial court did not abuse its discretion by excluding it.

¶ 32    A similar analysis applies to the audio portion of Callahan's interaction with defendant. Defendant's calm demeanor after the fact simply had no relevance to whether he was the initial victim of an unprovoked assault.  A fight is likely to change the combatants' demeanors regardless of who initiated it.  Lorenzo and Nelis testified that defendant appeared intoxicated, and Callahan testified that defendant's face was bleeding.  On the audio portion that defendant wanted to be played, he claims that he was very tired.  Thus, his placidity after the fight was more likely the product of intoxication, pain, and exhaustion than of a clear conscience.

¶ 33    Moreover, defendant's calm demeanor was inconsistent with an excited utterance. Although, as defendant argues, the recording was made a relatively short time after his 911 call (which was admitted as an excited utterance), the time factor is not dispositive.  The key inquiry is whether the excitement of the event still predominated.  *Sutton*, 233 Ill. 2d at 107.  Here, it appears that defendant was intoxicated and exhausted rather than feeling the excitement of the event.  Another factor is whether the statement was in the declarant's self-interest.  *Id.*  And

---

[1] Lorenzo testified that he only objected to going to a specific hospital while Nelis implied that Lorenzo did not want to go the hospital at all.  To the extent that the audio contradicted Lorenzo's testimony on this point, it was inadmissible as collateral impeachment.  See *People v. Collins*, 106 Ill. 2d 237, 269 (1985) (cross-examiner may not impeach a witness on a collateral matter; he or she must accept the witness's answer).

defendant's statements, in which he blamed Lorenzo for starting the fight, were largely self-serving.

¶ 34 Finally, defendant and Callahan testified about their interaction, making the audio of the conversation cumulative. We agree with the State that proffering this evidence appears to have been defendant's attempt to put his version of events before the jury a second time and, as such, was inadmissible as a prior consistent statement. Self-serving, out-of-court statements of a defendant are inadmissible hearsay. *People v. Patterson*, 154 Ill. 2d 414, 452 (1992). A prior consistent statement is admissible only to rebut an inference of recent fabrication or recent motive to testify falsely if the prior statement was made before the motive existed. *People v. Lambert*, 288 Ill. App. 3d 450, 453 (1997). Defendant does not attempt to satisfy these criteria.

¶ 35                                    III. CONCLUSION

¶ 36 The judgment of the circuit court of Kane County is affirmed.

¶ 37 Affirmed.